**GROWTH HORIZONS, INC.**

v.

**DELAWARE COUNTY, PA.**

Civ. A. No. 91–6710.

United States District Court,
E.D. Pennsylvania.

Feb. 24, 1992.

Edmond A. Tiryak, Philadelphia, Pa., for plaintiff.

Joseph M. Fioravanti, Curran, Winnig & Fioravanti, P.C., Media, Pa., for defendant.

## MEMORANDUM AND ORDER

CAHN, District Judge.

On July 1, 1990, Growth Horizons entered into a contract to provide Community Living Arrangements ["CLAs"][1] to *Pennhurst*[2] class members residing in Delaware County.[3] The plaintiff understood that Delaware County could cancel the contract by giving sixty days notice. *See* N.T. at 57–58; N.T. at 83–84. Delaware County did so on April 15, 1991, terminating the contract as of June 30, 1991. *See* Pl.Ex. 16. Although Growth Horizons does not contest the validity of the termination of the contract, *see* Pl. Letter Mem. at 1; N.T. at 84, nor does Growth Horizons seek to renew its contractual relationship with Delaware County, *see* Pl. Injunction Mem. at 3 n. 2, it does contend that Delaware County was obliged to assume certain long term leases that Growth Horizons had entered into in order to perform its contractual obligations.[4] At the very least, plaintiff argues, Delaware County is obliged to have the successor provider assume the leases.[5]

The plaintiff alleges that Delaware County's failure to fulfill its contractual obligations to assume the leases the plaintiff signed in reliance on the contract to establish CLAs amounts to a violation of the Fair Housing Act, 42 U.S.C. 3601, *et. seq.* This is because, in the plaintiff's eyes, handicapped individuals (i.e. the mentally retarded) will not be able to occupy the leased premises unless the defendant requires Elywn to assume the leases. The plaintiff has also argued that, unless the defendant requires Elywn to assume the leases, Delaware County will loose $40,000 in federal funds.

This case was originally marked as "related" to *Pennhurst* pursuant to Local R.Civ.P. 3(c)(1). On November 26, 1991, Judge Broderick held a hearing to determine the relationship between the case at bar and *Pennhurst*. On December 3, 1991,

---

1. A CLA is a method of providing care for mentally retarded individuals. In a CLA, a small number of retarded individuals ["clients"] live in a residential house or apartment. The staff members who live with the retarded individual(s) attempt to teach the clients normal living skills in an environment which approximates "normal" living as closely as possible. In addition to providing training, the staff also provides necessary medical care, supervision, and companionship. In this way, it is possible to "habilitate" mentally retarded individuals and integrate them into mainstream society. This method of caring for mentally retarded individuals contrasts directly with institutionalization.

2. *Halderman v. Pennhurst State School and Hospital*, No. 74–1345. The extensive procedural history of the *Pennhurst* case is summarized in Judge Broderick's most recent Opinion, filed on January 31, 1992. *See* 784 F.Supp. 215 (E.D.Pa.).

3. Growth Horizons, and others who run CLAs for *Pennhurst* class members, will be referred to as "providers" in certain portions of this Memorandum.

4. These leases were for properties which would be used for CLAs.

5. After terminating its contract with Growth Horizons, Delaware County contracted with Elywn, another provider of services to the mentally and physically challenged, to provide CLAs to the *Pennhurst* class members.

he found that the relationship contemplated by Local R.Civ.P. 3(c)(1) did not exist, and ordered the case reassigned. *See* Order of December 3, 1991. In accordance with the random assignment policy of the Eastern District of Pennsylvania, the case was assigned to this court's docket.

Initially, the court must observe that Judge Broderick was correct when he determined that the case at bar is not related to *Pennhurst*. While the contract which forms the basis of this dispute is critical to fulfilling Delaware County's responsibilities under the *Pennhurst* Final Settlement Agreement, the plaintiff, a provider of CLAs, does not have standing to assert a violation of the *Pennhurst* settlement decree. If such a challenge is to be brought, it must be brought by the *Pennhurst* class members. Judge Broderick, who retains jurisdiction over *Pennhurst*, is more than capable of entertaining a Motion for Contempt Sanctions brought by the class members. Indeed, given Judge Broderick's continuing jurisdiction, his intimate familiarity with the issues involved, and his exemplary handling of the case for the past eighteen years, any alleged violations of the *Pennhurst* settlement decree are properly brought before him.

This case, however, simply alleges that Delaware County has breached a contract. Because the plaintiff's complaint rests on such a basis, the defendant has filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). The plaintiff has filed a Motion for a Preliminary Injunction. This court held a hearing on these Motions on February 13, 1992.[6] Since the court will grant the defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, the court is without power to consider the plaintiff's request for injunctive relief.

■■■ Because federal courts are courts of limited jurisdiction, *see Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433, 109 S.Ct. 683, 687, 102 L.Ed.2d 818 (1989); *Bender v. Williamsport Area School District*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173–76, 2 L.Ed. 60 (1803); *Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir.1990), the plaintiff in any action bears the burden of proving that federal jurisdiction is proper. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). Although the standard for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) is similar to the standard for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), *see Mortensen*, 549 F.2d at 890; *Rannels v. Hargrove*, 731 F.Supp. 1214, 1216 (E.D.Pa.1990), there is one critical difference. When a defendant argues that the court cannot have subject matter jurisdiction over the claim (as opposed to arguing that the claim, as pleaded, does not set forth a basis for federal jurisdiction), the court is not required to accept the allegations of the plaintiff's complaint as true. Instead, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. *See also Haase v. Sessions*, 835 F.2d 902, 908 (D.C.Cir.1987).[7]

■■■ After hearing the evidence presented by the parties, the court is convinced that the complaint does not present a federal question. Since the requirements

---

**6.** Before the hearing, the court announced its intention to convert the hearing on the requested preliminary injunction to a hearing on the merits of permanent injunctive relief. *See* Fed.R.Civ.P. 65(a)(2). Both parties agreed to this procedure. The hearing afforded the parties ample opportunity to present all evidence which they deemed relevant. *See* N.T. at 234–36. At the conclusion of the hearing, the court invited the parties to submit supplemental "Letter Briefs" addressing the court's concerns. *See* N.T. at 228.

**7.** It is because of this critical difference in the standards for dismissing pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6) that appellate courts have requested that trial courts clearly state the basis for the dismissal of a claim. *See Kehr,* 926 F.2d at 1409; *Mortensen,* 549 F.2d at 890.

of 28 U.S.C. § 1331 cannot be met, this court is without jurisdiction to hear the case at bar.[8] Because the plaintiff has admitted that its state law claims would fall by the wayside if its federal claims were dismissed, *see* Pl. Jurisdictional Mem. at 1 n. 1, a discussion of the court's supplemental jurisdiction is unnecessary.

The plaintiff claims that, by refusing to assume the leases Growth Horizons entered into, Delaware County has violated the Fair Housing Act, 42 U.S.C. § 3601, *et. seq.*, specifically the provisions found in 42 U.S.C. § 3604(f)(1)(C). If § 3604(f)(1)(C) is implicated, the plaintiff will have stated a basis for jurisdiction. If not, dismissal is proper.

The Fair Housing Act makes it illegal to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of ... any person associated with that person." 42 U.S.C. § 3604(f)(1)(C). In order to determine if the Fair Housing Act is implicated by the plaintiff's complaint, the court must answer two questions. First, is the relationship between a provider and a client a sufficient "relationship" to make the client "any person associated with that person" for purposes of giving the provider a right of action under the Fair Housing Act? Second, does a county's refusal to assume a lease "make unavailable or deny" housing to mentally retarded individuals?

The plaintiff argues that the relationship between Growth Horizons and its clients is sufficient to allow the plaintiff to raise a challenge under the Fair Housing Act. While the court is aware that the right to sue under the Fair Housing Act has been interpreted broadly, *see, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373–76, 102 S.Ct. 1114, 1121–23, 71 L.Ed.2d 214 (1982); *Resident Advisory Board v. Rizzo,* 564 F.2d 126, 146–47 (3d Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1457, 1458, 55 L.Ed.2d 499 (1978); *Association of Friends and Relatives of AIDS Patients v. Regulations & Permits Administration,* 740 F.Supp. 95, 102 (D.P.R.1990) (hereinafter *"A.F.A.P.S."*), it is not clear that there is any present relationship between the plaintiff and mentally retarded individuals residing in Delaware County. *Cf. Smithfield Concerned Citizens v. Town of Smithfield,* 719 F.Supp. 75, 85 (D.R.I.1989), *aff'd,* 907 F.2d 239 (1st Cir.1990) (holding that a community association which did not include minorities did not have standing bring suit under the Fair Housing Act). While there was a relationship between the plaintiff and its clients during 1990 and 1991, the relationship was based on a contract. The contract has since been terminated.[9]

It would appear, then, that Growth Horizons has no more relationship with the *Pennhurst* class members residing in Delaware County than any other concerned citizen. "While helping one's fellow citizen is an admirable goal, the Constitution limits federal court jurisdiction to review of 'actual cases or controversies' in which the

---

8. Since the plaintiff is a Pennsylvania corporation, *see* Complaint ¶ 3, and the defendant is a political subdivision of the Commonwealth of Pennsylvania, *see* Complaint ¶ 8, the requirements of 28 U.S.C. § 1332 cannot be fulfilled.

The only other basis for jurisdiction urged by the plaintiff is 28 U.S.C. § 1343(3) (providing jurisdiction over civil rights cases). The court finds, however, that 42 U.S.C. § 1983 is not implicated by this case. The plaintiff has alleged, in conclusory terms, that Delaware County deprived the plaintiff of property without due process of law when it canceled its contract with the plaintiff. Since the plaintiff has an adequate remedy for a breach of contract under state law (i.e. a suit in state court for money damages), the plaintiff's allegations cannot rise to the level of a due process violation. *See*

*Kauth v. Hartford Ins. Co. of Illinois,* 852 F.2d 951, 955–56 (7th Cir.1988) ("The Supreme Court has clearly stated that if a state provides an adequate means of redressing a property deprivation, the victim of the deprivation has been accorded due process of law.") (citations omitted); *Bello v. Walker,* 840 F.2d 1124, 1128 (3d Cir.), *cert. denied,* 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988).

9. The fact that the contract between Growth Horizons and Delaware County has been terminated distinguishes this case from cases such as *Baxter v. City of Belleville, Illinois,* 720 F.Supp. 720 (S.D.Ill.1989), where a provider was allowed to raise claims of discrimination against its *present* clients. *See Baxter,* 720 F.Supp. at 730–31.

plaintiff has a 'personal stake' in the litigation." *Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir.1981) (citations omitted). The representative of the third party, i.e. the attorneys representing the *Pennhurst* class before Judge Broderick, must bring the challenge.

Fortunately, the court need not reach the troublesome question of whether the plaintiff's relationship with its former clients is sufficient to allow it to allege a violation of the Fair Housing Act. This is because the second question must be answered in the negative. The plaintiff has not proved that Delaware County has acted in such a way as to run afoul of the prohibitions contained in 42 U.S.C. § 3604.

All the plaintiff has shown is that the defendant has refused to assume certain leases, or to direct the subsequent provider to assume them.[10] This in no way "makes unavailable or denies" housing to mentally retarded individuals. "The Fair Housing Act does not impose any duty upon a governmental body to construct or to 'plan for, approve and promote' any housing." *Acevedo v. Nassau County, New York*, 500 F.2d 1078, 1082 (2d Cir.1974). At the hearing it became clear that, if funding could be found, there is nothing to prevent mentally retarded people from moving into these leased premises tomorrow. *See* N.T. at 17–19. *See also* N.T. at 105. *Cf. Familystyle of St. Paul v. City of St. Paul*, 923 F.2d 91, 94 (8th Cir.1991) ("The challenged state laws and city ordinance [requiring CLAs to be located at least one quarter mile away from existing CLAs] do not affect or prohibit a retarded or mentally ill person from purchasing, renting, or occupying a private residence or dwelling."); *Burrell v. City of Kankakee*, 815 F.2d 1127, 1130–31 (7th Cir. 1987) ("In any event, plaintiffs claims are

not cognizable under the Fair Housing Act since defendants' conduct did not directly affect the availability of housing to minorities."); *Acevedo*, 500 F.2d at 1081 ("here appellants seek not to remove governmental obstacles to proposed housing but rather to impose on appellees an affirmative duty to construct housing. This is clearly not required by any provision of the Constitution."). For this reason, Delaware County could not have violated the Fair Housing Act, since it did not perform any act which would prevent handicapped individuals from obtaining housing.

The court must take pains to point out that this is not a case where a local government has used zoning or other land use laws to prevent the establishment of a CLA. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 447–50, 105 S.Ct. 3249, 3258–60, 87 L.Ed.2d 313 (1985); *Smithfield*, 719 F.Supp. at 85; *A.F.A.P.S.*, 740 F.Supp. at 105–07. Such refusals make it *impossible* for members of protected classes to occupy housing units. This contrasts with the present case, in which the defendant has, at most, failed to provide funding which would allow mentally retarded persons to move into a specific house. As a general matter, counties and municipalities are not required to fund specific housing projects. *See Arthur v. City of Toledo, Ohio*, 782 F.2d 565, 577 (6th Cir. 1986); *Acevedo*, 500 F.2d at 1080–81 ("Appellees have no constitutional or statutory duty to provide low income housing. There is no 'constitutional guarantee of access to dwellings of a particular quality.' ") (citations omitted); *Schmidt v. Boston Housing Authority*, 505 F.Supp. 988, 995 (D.Mass.1981) ("there is no federally protected right to housing in a particular community").[11] The refusal to provide funding

---

**10.** The plaintiff has not alleged that the defendant's termination of the contract was wrongful. *See* Pl. Letter Mem. at 1. Even if the plaintiff had done so, this would be, at most, a violation of the *Pennhurst* settlement decree. Such a violation would be appropriately raised by the *Pennhurst* class representatives in a Motion for Contempt before Judge Broderick, not in a separate suit alleging violations of the Fair Housing Act.

**11.** The court would be concerned if the plaintiff had presented credible evidence which would tend to show that the defendant's actions were caused by its dislike of, or prejudice against, mentally retarded individuals. No such evidence was presented at the hearing. While the plaintiff's witnesses did allude, in a general way, to political pressure, the plaintiff did not present any evidence that the defendant acted out of an improper motive. The fact that individual residents of the township (i.e. CLA neigh-

does not violate the Fair Housing Act because it does not make it impossible for a member of a protected class to obtain housing.[12] At most, then, the plaintiff can show that, without financial help, mentally retarded individuals will be unable to move into CLAs in the locations the plaintiff has rented. The court does not know of any precedent which mandates the expenditure of public funds to allow a given individual to secure a specific housing unit, and the court declines to set such a precedent in this case.

bors) might have harbored prejudice towards the mentally retarded does not alter this conclusion.

12. The defendant's witnesses testified that it is possible for CLAs to be privately funded. *See* N.T. at 192 ("I've started several [CLAs] in New Jersey that were privately funded."). *See also* N.T. at 191.