**GROWTH HORIZONS, INC., Appellant,**

v.

**DELAWARE COUNTY, PENNSYLVANIA.**

No. 92–1195.

United States Court of Appeals, Third Circuit.

Argued Sept. 18, 1992.

Decided Jan. 21, 1993.

---

Edmond A. Tiryak (argued), Philadelphia, PA, for appellant.

Joseph M. Fioravanti (argued), Curran, Winning & Fioravanti, P.C., Media, PA, for appellee.

Before STAPLETON, SCIRICA, and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

Plaintiff/appellant, Growth Horizons, Inc., ("Growth") appeals an order dismissing its Fair Housing Act ("FHA") and breach of contract claims for lack of subject matter jurisdiction. *Growth Horizons, Inc. v. Delaware County*, 784 F.Supp. 258 (E.D.Pa.1992). Given the rather unusual procedural context of this case, we are required to address three distinct issues—whether the district court possessed jurisdiction over Growth's FHA claim, whether Growth has a claim under that Act on which relief could be granted, and whether the district court had supplemental jurisdiction over the breach of contract claim.

### I.

Growth is a Pennsylvania corporation which provides Community Living Arrangements (CLA's) to retarded individuals in which these individuals are cared for and taught "normal living skills" in as normal an environment as possible. In July 1990, Growth signed a contract with Delaware County to provide fifteen retarded individuals, who are class members in the prolonged ongoing litigation in *Halderman v. Pennhurst State School and Hospital*, No. 74–1345, with CLA placements. Growth proceeded to lease and renovate four sites for this purpose.

The first site Growth opened developed substantial operating problems which were, Growth admitted, at least partially its own fault. The Special Management Unit ("SMU"), a state monitoring agency, expressed serious concerns about Growth's management of the first facility[1] and recommended that the County not permit Growth to open any other sites until the first CLA met appropriate standards.

The contract with Growth was canceled by the County, after giving the required notice, on June 30, 1991. At that time three of the four sites remained unoccupied by retarded individuals. Growth then brought suit against the County alleging that under the contract, the County is obligated to assume Growth's interests in the sites, or alternatively, to force the successor provider to assume Growth's interests.[2] Growth also alleged that the County's failure to assume the leases was the result of political pressure emanating from bias against the handicapped.[3] For this reason, Growth contends that the County's refusal to assume the leases constituted unlawful discrimination against handicapped individuals under the Fair Housing Act Amendments of 1988, 42 U.S.C.A. § 3601 *et. seq.* (West Supp.1992).

Shortly after service of the complaint, the County filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), and Growth moved for a preliminary injunction. At the hearing on these motions, the court initially expressed reservations concerning whether Growth had standing and suggested the possibility of hearing evidence on that issue first in order to resolve the County's motion to dismiss for lack of subject matter jurisdiction. Ultimately, however, as a matter of convenience, the court decided to hear all evidence from both parties concerning the merits of the action, or as the court put it, concerning both "the discrimination issue" and the "standing issue," (App. at 271), reserving only the issue of damages for possible later consideration. *See Growth Horizons*, 784 F.Supp. at 260 n. 6.

The district court concluded that subject matter jurisdiction was lacking because the County's conduct did not run afoul of the

---

1. The SMU conducted a number of inspections, and sent at least three letters to the County expressing its concerns. One of these letters identified forty-seven separate complaints against the Growth-run CLA.

2. At the time of trial, successor providers had signed leases for two of the four sites.

3. The County claims that the decision not to assume the leases was made by the successor providers who had legitimate, non-discriminatory reasons (i.e. expense, proximity of trolley tracks which pose a danger to the class members, etc.).

statute's prohibitions and therefore did not raise a federal question. The court declined to reach the issue of whether Growth had standing. It also did not discuss the issue of supplemental jurisdiction but rather dismissed Growth's state law claim on the grounds that Growth had conceded that such claim would "fall by the wayside" if the federal claim were dismissed. *Growth Horizons*, 784 F.Supp. at 261. Growth Horizons filed this timely appeal.

## II.

■ Because the presence or absence of subject matter jurisdiction over a complaint invoking federal question jurisdiction is an issue of law, we consider the district court's action on the FHA claim under a plenary standard of review. *See, e.g., York Bank & Trust v. Federal Savings and Loan Insurance Corp.*, 851 F.2d 637, 638 (3d Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989).

The district court dismissed plaintiff's FHA claim pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction rather than under Rule 12(b)(6) for failure to state a claim. It first took note of the federal statute on which Growth relied most heavily in asserting its federal claim: "The Fair Housing Act makes it illegal to 'discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap....'" *Growth Horizons*, 784 F.Supp. at 261 (quoting 42 U.S.C. § 3604(f)(1)(C)). The district court then concluded that the question of subject matter jurisdiction turned on a two part inquiry:

> First, is the relationship between a provider and a client a sufficient "relationship" to make the client "any person associated with that person" for purposes of giving the provider a right of action under the Fair Housing Act? Second, does a county's refusal to assume a lease "make unavailable or deny" housing to mentally retarded individuals?

*Id.* at 261. The district court held that Growth's claim failed to meet the second

prong of this two part test and after an abbreviated discussion of the first prong, declined to rule on that issue. We can accept neither the district court's analysis nor its conclusion. Growth's complaint states a federal claim over which the district court had subject matter jurisdiction.

The district court dismissed Growth's suit because, in its view, the County's actions did not "make unavailable or deny housing to mentally retarded individuals," and accordingly, the Fair Housing Act was "not implicated." *Id.* at 261–62. Even if this is an accurate conclusion, however, it does not justify a jurisdictional dismissal. In *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the Supreme Court laid down the basic rule concerning dismissals for lack of subject matter jurisdiction in cases alleging a violation of the Constitution or a federal statute:

> Whether the complaint states a cause of action on which relief could be granted is a question of law and ... it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

*Id.* at 682, 66 S.Ct. at 776. The Court specified only two exceptions to this rule: "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.*

■ The rule that legal insufficiency of a federal claim generally does not eliminate the subject matter jurisdiction of a federal court has been reaffirmed and clarified by both the Supreme Court and this Court on several occasions: "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve

a federal controversy.' " *Kulick v. Pocono Downs Racing Ass'n,* 816 F.2d 895, 899 (3d Cir.1987) (quoting *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 776, 39 L.Ed.2d 73 (1974)); *see also Luderstadt v. Colafella,* 885 F.2d 66, 70 (3d Cir.1989) (quoting *Kulick* on this point and noting that "[t]he threshold to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion"); *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408–09 (3d Cir.), *cert. denied* — U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

The district court neither mentioned nor applied this rule when it dismissed Growth's action.[4] Instead, after hearing evidence, it engaged in a detailed analysis as to whether Growth had shown it had a valid claim under the FHA. *See Growth Horizons,* 784 F.Supp. at 261–62. The court's "factual inquiry" into jurisdiction,[5] and its legal conclusions went to the heart of the merits of plaintiff's claim—the dismissal was based upon a finding that the County's actions did not " 'make[ ] unavailable or den[y] housing' to mentally retarded individuals." *Growth Horizons,* 784 F.Supp. at 262. By ruling that the County's conduct did not violate the federal statute as Growth alleged, the district court rendered a judgment on the merits rather than a jurisdictional decision.

**4.** In the district court's view, "the standard for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) is similar to the standard for dismissal pursuant to Fed.R.Civ.P. 12(b)(6)," the "one critical difference" being that under 12(b)(1) the court can find facts while under Rule 12(b)(6) it must accept plaintiff's factual allegations as true. *Growth Horizons,* 784 F.Supp. at 260. This is incorrect. While it is true that a court can find facts under Rule 12(b)(1) but not under Rule 12(b)(6), *Colafella* and *Kehr Packages* explicitly state that the standard for dismissal under the two rules is different.

**5.** The ability of a court to examine facts in determining jurisdiction (which was relied upon by the district court in rendering its jurisdictional dismissal, *see Growth Horizons,* 784 F.Supp. at 260), does not mean that a court can disregard the standard enunciated by *Bell v. Hood* and subsequent cases. In at least two previous cases, we have reversed district court dismissals

A district court has federal question jurisdiction in any case where a plaintiff with standing makes a non-frivolous allegation that he or she is entitled to relief because the defendant's conduct violated a federal statute. Here, the plaintiff makes a non-frivolous claim that the County's refusal to assume the leases violated the FHA. Whether or not Growth's claim is one on which relief can be granted, if it has standing, the district court has subject matter jurisdiction.

### III.

The Supreme Court has held that with regard to the rights granted by the Fair Housing Act,

"Congress intended standing ... to extend to the full limits of Art. III" and ... the courts accordingly lack the authority to create prudential barriers to standing in suits brought under that section. Thus the sole requirement for standing to sue under [the Act] is the Art. III injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered "a distinct and palpable injury."

*Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 103 n. 9, 99 S.Ct. 1601, 1609 n. 9, 60 L.Ed.2d 66 (1979) and *Warth v. Seldin,* 422 U.S. 490,

premised on lack of subject matter jurisdiction where the factual and legal issue reached by the courts "was properly a concern not of jurisdiction but of the merits." *Kulick,* 816 F.2d at 897; *see also Mortensen v. First Federal Savings & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). As the *Kulick* court noted, "a court has jurisdiction of the dispute so long as the plaintiff alleges that defendant's actions violate the requisite federal law ... otherwise, the district court could turn an attack on the merits ... into an attack on jurisdiction." *Id.; see also Green v. Ferrell,* 664 F.2d 1292, 1294 (5th Cir.1982) (reversing a district court jurisdictional dismissal where "rather than seeking to determine some discrete jurisdictional requisite, [the factual inquiry conducted by the district court] blanketed the merits of plaintiff's claims"); *see also Poindexter v. United States,* 777 F.2d 231, 236 (5th Cir.1985) (examining whether "the jurisdictional question can be sufficiently extricated from the merits of the complaint").

501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)).[6]

Under this standard, Growth clearly has standing. The allegedly discriminatory refusal of the County to assume the leases is the conduct that Growth alleges to be a violation of the Act. There is also no dispute that Growth sustained actual injury because of this conduct. As a result of the County's refusal to assume the leases, Growth has been forced to pay rent on the leases out of its own pocket, and is threatened with having to "buy out" the remainder of the long term leases. Growth therefore does have a "distinct and palpable injury" as required by article III.[7]

## IV.

It follows that the district court's order dismissing for want of jurisdiction must be reversed. That does not end the matter, however. The parties have had an opportunity to tender all of their evidence on the merits of the issues raised by Growth. If based on that evidence, judgment in favor of the County is required as a matter of law on the federal claim, considerations of judicial economy dictate that our remand be with instructions to enter a judgment on the merits of that claim in the County's favor.

Section 3604(f)(1) of the FHA makes it unlawful for anyone to "make unavailable or deny a dwelling to any buyer or renter because of a handicap" of the prospective buyer or lessee, of anyone intending to occupy the dwelling after the sale or lease, or of anyone associated with that buyer or lessee. 42 U.S.C.A. § 3604(f)(1) (West Supp.1992). Growth contends that by failing to assume the leases, the County made the CLA homes unavailable to the handicapped *Pennhurst* plaintiffs and thereby violated this section. The district court held that the County's refusal to assume the leases "in no way 'makes unavailable or denies' housing to mentally retarded individuals," and went on to distinguish the County's actions from zoning or other land use laws where the defendant's actions "make it *impossible* for members of protected classes to occupy housing units." *Growth Horizons*, 784 F.Supp. at 262. Since "if funding could be found, there is nothing to prevent mentally retarded people from moving into these leased premises tomorrow," *id.*, the court concluded that no FHA violation was present.

We would be reluctant to hold that a plaintiff asserting a claim under § 3604(f)(1) must prove that the defendant made it impossible for a handicapped person to occupy a dwelling. We think it

6. The language of the statute clearly supports this rule. The statute permits any "aggrieved person" to commence a civil action in a United States district court, 42 U.S.C.A. § 3613(a)(1)(A) (West Supp.1992), and includes in the definition of "an aggrieved person" any person who "claims to have been injured by a discriminatory housing practice." 42 U.S.C.A. § 3602(i) (West Supp.1992). The Supreme Court has made clear what seems evident from this language—that "an aggrieved person" does not necessarily have to be the person discriminated against. *See, e.g., Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 208–12, 93 S.Ct. 364, 366–68, 34 L.Ed.2d 415 (1972); *Gladstone*, 441 U.S. at 102–09.

7. In analyzing the standing issue, the district court and the County focus on that portion of § 3604(f)(1) which makes it unlawful to "make unavailable or deny, a dwelling to any buyer or renter because of *a handicap of*—(A) that buyer or renter ... or (C) *any person associated with that buyer or renter.*" 42 U.S.C.A. § 3604(f)(1) (West Supp.1992) (emphasis added). The Coun-

ty claims that Growth Horizons lacks standing because it is not "associated with" handicapped individuals. The district court also based its standing analysis on the "associated with" language. *See, e.g., Growth Horizons*, 784 F.Supp. at 261. This analysis once again substitutes a merits inquiry for a jurisdictional one. The section that confers a right to commence an action in federal court and "to obtain appropriate relief," § 3613(a)(1), does not restrict the right to bring an action to persons "associated with" a handicapped person, but rather allows anyone sustaining an actual injury from an alleged discriminatory housing practice to commence a suit. Even if the district court's suggestion that Growth cannot assert a claim on behalf of the *Pennhurst* plaintiffs and do not represent such plaintiffs is true, this does not deprive Growth of standing. Its standing is conferred by the direct injury it is sustaining due to the County's alleged discrimination against the handicapped *Pennhurst* plaintiffs. The "associated with" language is not a limitation on standing, but rather is part of the grant of the substantive right.

likely that conduct short of foreclosing a housing opportunity altogether may violate the statute.[8]

■■■■ Nevertheless, we agree with the district court's conclusion that Growth has no meritorious claim under § 3604(f)(1). As its text and legislative history evidence, the purpose of this statute is to protect the housing choices of handicapped individuals who seek to buy or lease housing and of those who seek to buy or lease housing on their behalf.[9] The conduct and decision-making that Congress sought to affect was that of persons in a position to frustrate such choices—primarily, at least, those who own the property of choice and their representatives.

■■ Growth asks us to read the statute to include situations, like the one before us, far different from the obvious target of the statute. Under Growth's view, the statute should be read to regulate the conduct of those who pay for housing for the handicapped because of some external duty imposed by law—in the County's case, a duty imposed by the *Pennhurst* settlement. One has great difficulty, however, getting the text to literally encompass a situation in which a public agency sponsor of housing for the handicapped, allegedly because of neighborhood bias, has decided not to lease particular housing but rather to make an alternative choice. Under the literal language of the statute, there can be no liability unless the defendant in a case acts to make a dwelling unavailable to a potential buyer or lessee. Here, the County is both the defendant actor and the potential buyer or lessee;[10] we are thus asked to find that the County violated the statute by making housing unavailable to itself. We think it highly unlikely, however, that § 3604(f)(1) was intended to impose liability on those who purchase or lease housing on behalf of handicapped persons, one of the classes of persons the section was designed to protect. More fundamentally, because the County retained the choice whether to lease the properties in question or to seek other dwellings, the housing at issue here was not made unavailable to the County. Indeed, we doubt that Congress would think that anyone is denied housing when a public sponsor opts for one house over another.

Nothing in the text or legislative history of § 3604(f)(1) suggests to us that Congress intended to regulate and thereby subject to judicial review the decision-making of public agencies which sponsor housing for the handicapped. This is not to say that the decision of such agencies cannot be tainted by bias against the handicapped. But that problem, if it exists, is far different from and presumably less serious than the problem of biased sellers and lessors Congress here addressed. Subjecting to

---

**8.** Other courts have so held in the context of similar antidiscriminatory subsections of § 3604. *See, e.g., McDonald v. Verble,* 622 F.2d 1227 (6th Cir.1980) (fact that victim of discrimination was eventually allowed to buy home does not justify dismissal of claim of racial steering); *United States v. Pelzer Realty Co.,* 484 F.2d 438, 442 (5th Cir.1973) (violation of FHA found where terms of sale were different for blacks than for whites), *cert. denied,* 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 286 (1974); *see also* 24 C.F.R. § 100.70 (1991) (making it unlawful "to discourage or obstruct choices in a community, neighborhood or development").

**9.** The legislative history cited by Growth supports this view. *See, e.g.,* 134 Cong.Rec. S10556 (daily ed. Aug. 2, 1985) (statement of Sen. Cranston, quoted in Appellant Br. at 27 n. 33) ("Ensuring nondiscrimination in housing means ensuring an essential element of independence and integration into the community for disabled individuals.... [No freedom] is more elemen-

tary than having the freedom to choose where and how one lives."); *see also id.* at S10558 (statement of Sen. Metzenbaum: "There is nothing more fundamental than the right to choose one's home."); *id.* at S10545 (statement of Sen. Simpson: "If we are to permit individuals with disabilities to realize their full potential and become *independent* and *self-sufficient,* then we must expand the scope of the Fair Housing Act to encompass housing transactions." (emphasis added)).

**10.** Because the handicapped individuals in this case are not supplying the funds nor seeking a proprietary interest in the property, they are neither buyers nor renters. Furthermore, contrary to Growth's suggestion at oral argument, no housing has been "made unavailable" to Growth nor can Growth be considered a buyer or renter—it has already bought or rented the dwellings. Thus, the only potential buyer or renter here is the County.

judicial review decisions of public agencies to invest in one property rather than another would impose a financial burden on the limited resources currently devoted to housing the handicapped. In the absence of some indication that Congress saw a problem in this area sufficient to justify that burden, we decline to read the statute as broadly as Growth.[11]

In summary, we hold that a public agency's refusal to pay for a given housing unit, even if influenced by bias against the handicapped, does not violate § 3604(f)(1).[12]

## V.

■ In addition to asserting an FHA claim, Growth asserted a state breach of contract claim, claiming that the county breached a contractual obligation to assume the leases upon termination of the contract. The district court, after dismissing the federal claim, also dismissed this pendent state law claim because Growth had conceded that if the federal claim were dismissed on jurisdictional grounds, then the state claim would also fail. *Growth Horizons,* 784 F.Supp. at 261. The fact that the district court did have jurisdiction over the federal claim materially alters the analysis concerning that court's jurisdiction over the contract claim. Because we conclude that the district court has both juris-

diction over the state claim and discretion to either exercise or not exercise that jurisdiction, we will remand so that the district court may decide whether or not to render judgment on this claim.

■ Under the Judicial Improvements Act of 1990, the district court has jurisdiction over the state claim. Section 1367 states that the federal courts "shall have supplemental jurisdiction" over claims which are "part of the same case or controversy" as a claim over which the court exercises original jurisdiction. 28 U.S.C.A. § 1367(a) (West Supp.1992). Subsection (c), however, provides that a district court may, in its discretion, decline to exercise jurisdiction if any of four conditions are met; one of these conditions is if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c). In making its determination, the district court should take into account generally accepted principles of "judicial economy, convenience, and fairness to the litigants." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see also* David D. Siegel, *Practice Commentary,* appended to 28 U.S.C.A. § 1367 ("Whether a dismissal of the touchstone claim should bring about a dismissal ... of the dependent claim for want of supplemental jurisdiction should hinge on the moment within the litigation when the

---

**11.** Growth also relies on two regulations promulgated under the Act. *See* 24 C.F.R. § 100.-70(a) (1991) ("It shall be unlawful, because of ... handicap ... to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to ... obstruct choices in a community neighborhood or development."); *id.* § 100.70(b) ("It shall be unlawful, because of ... handicap ... to engage in any conduct relating to the provision of housing or of services and facilities in connection therewith that otherwise makes unavailable or denies dwellings to persons."). These sections do not change our analysis. Section 100.70(a), like the statute, protects the choices of a buyer or renter of housing such as the County; it is not meant to impose liability on such entities. Furthermore, neither the language in § 100.70(a) nor (b) suggests to us that the agency would interpret the statute's prohibition on actions which "make unavailable" a dwelling to a handicapped individual as including a government's refusal to purchase a certain housing unit.

**12.** Although Growth relies primarily on § 3604(f)(1), in support of its claim it also cites § 3604(f)(2) which prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling" and § 3604(f)(3)(B) which makes unlawful "a refusal to make reasonable accommodations in rules, policies, practices, or services." The County's refusal to assume the leases, however, plainly does not involve "the terms, conditions, or privileges of sale or rental"; nor does it involve "the provision of services or facilities in connection with ... a dwelling"; nor does it constitute a failure "to make reasonable accommodations."

Because we hold that the FHA does not render unlawful the County's refusal to pay for housing, there is no need to reach Growth's claims of inadequate or erroneous factfinding. Nor is there a need to reach Growth's claims of "disparate impact" or "discriminatory intent," since those claims only are viable if the County's refusal to pay implicates the FHA.

dismissal of the touchstone claim takes place and on the other surrounding circumstances.... [I]f the dismissal of the main claim occurs late in the action, ... knocking [the dependent claims] down with a belated rejection of supplemental jurisdiction may not be fair.").

In this case, the district court has already held a trial on the merits and has already heard all the evidence necessary to reach a decision on the plaintiff's contract claim. This circumstance may cause the district court to decide that claim rather than dismiss it.[13] We therefore will remand to the district court with instructions that it exercise its discretion as to whether it should decide Growth's state law claim or dismiss that claim without prejudice.[14]

### VI.

The district court's order dismissing Growth's suit for want of jurisdiction will be reversed, and the case will be remanded with instructions that judgment be entered for the County on the federal claim. On remand, the district court will either adjudicate the breach of contract claim or dismiss it without prejudice.

---

**13.** *Cf. Intermountain Power Project v. Jones,* 794 F.2d 546, 550 (10th Cir.1986) (noting that it is "extremely inefficient, inconvenient, and unfair to the litigants and the other participants in the trial" for an appellate court to overturn a district court decision to exercise pendent jurisdiction over a state claim where the federal claim is dismissed after trial).

**14.** The County argues that *any* dismissal of the federal claim should preclude consideration of the state claim, citing *Lovell Mfg. v. Export–Import Bank of the United States,* 843 F.2d 725 (3d Cir.1988) for the proposition that absent

extraordinary circumstances, a district court must dismiss all pendent claims once it dismisses the federal claim. Even assuming this is a reasonably accurate statement of the rule in *Lovell,* as Growth rightly points out in its reply brief, *Lovell* was decided prior to the passage of the current version of § 1367. The language in § 1367 expressly contradicts the County's reading of *Lovell* in that it states that federal courts *shall* exercise supplemental jurisdiction over pendent claims arising out of the same case or controversy and *may* decline to exercise jurisdiction if all federal claims are dismissed.