**AES CORPORATION, Plaintiff,**

v.

**DOW CHEMICAL COMPANY, Defendant.**

**No. CIV A 99–673–JJF.**

United States District Court, D. Delaware.

Aug. 2, 2001.

Michael D. Goldman and Stephen C. Norman, Esquires, of Potter Anderson & Corroon, LLP, Wilmington, Delaware. Of Counsel: James W.B. Benkard, Dennis E. Glazer and Frances E. Bivens, Esquires, of Davis Polk & Wardwell, New York, New York. Attorneys for Plaintiff.

David C. McBride and John W. Shaw, Esquires, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Of Counsel: Herbert L. Zarov and Daniel J. Delaney, Esquires, of Mayer, Brown & Platt, LLP, Chicago, Illinois. Attorneys for Defendant.

## MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is Defendant Dow Chemical Company's Motion for Summary Judgment (D.I.109). For the reasons stated below, Defendant's Motion for Summary Judgment (D.I.109) will be granted.

## BACKGROUND

### I. Procedural Background.

Plaintiff AES Corporation ("AES") filed an Amended Complaint (D .I. 67) against

Defendants Destec Energy, Inc. ("Destec Energy") and Dow Chemical Company ("Dow") asserting securities fraud claims under the Securities Exchange Act of 1934 (the "Exchange Act"), the Texas Securities Act, a claim under section 27.01 of the Texas Business and Commerce Code and common law claims for fraud and conspiracy. AES dismissed all of its claims against Destec Energy. (D.I.71). Dow moved to dismiss all claims asserted against it. By Memorandum Opinion and Order dated January 19, 2001, the Court granted Dow's Motion to Dismiss with respect to Plaintiff's claims arising under the Texas Securities Act and denied Dow's Motion to Dismiss with respect to all other claims. (D.I.102, 103).

Pursuant to Federal Rule of Civil Procedure 56, Dow now moves for summary judgment against AES based on certain clauses in the transaction documents. The parties have fully briefed the motion, and the Court held oral argument on the motion on April 24, 2001.

## II. Factual Background

Because Dow brings this motion before discovery has been conducted, the following facts are based upon the allegations in the Amended Complaint (D.I.67) and the four documents submitted by Dow in support of its motion for summary judgment (D.I.111).

### A. *The Parties*

AES, a Delaware corporation with its principal place of business in Virginia, buys and operates power facilities domestically and internationally as part of its business activities. (D.I.67, ¶ 8). Dow is a Delaware corporation with its principal place of business in Michigan. *Id.* at ¶ 9. Prior to the transaction at issue, Dow was the majority shareholder of Destec Energy, which in turn was the parent of Destec Engineering, Inc. ("Destec Engineering"). *Id.* at ¶¶ 9, 16.

### B. *The Transaction*

AES acquired the shares of Destec Engineering pursuant to a plan for NGC Corporation ("NGC") and AES to acquire Destec Energy for approximately $1.2 billion and divide the company between them, with NGC retaining Destec Energy's domestic assets and AES acquiring Destec Energy's international assets, including Destec Engineering. (D.I.67, ¶¶ 36, 47, 48). The transaction was structured in two steps. First, on February 17, 1997, Dow, Destec Energy and NGC entered into the Agreement and Plan of Merger by and among Destec Energy, Inc., The Dow Chemical Company, NGC Corporation and NGC Acquisition Corporation II ("Merger Agreement") whereby NGC purchased all of Destec Energy from Dow. (D.I.111, Exh. B). Second, also on February 17, 1997, NGC and AES entered into the Asset Purchase Agreement by and between NGC Corporation and The AES Corporation, and as amended June 29, 1997 ("Asset Purchase Agreement") whereby AES purchased the international assets of Destec Energy, including the shares of Destec Engineering, from NGC. (D.I.111, Exh. C, C–1).

AES alleges that Dow and Destec Energy conspired to sell Destec Energy and its international assets at an artificially inflated price by misrepresenting the future prospects of Destec Engineering, a subsidiary of Destec Energy. (D.I.67, ¶ 1). Specifically, the Amended Complaint asserts that Dow and Destec Energy misrepresented the expected completion date and profit potential of an ongoing Destec Engineering project to build a power plant ("Elsta") in Terneuzen, The Netherlands. *Id.* at ¶¶ 1–2, 50–51, 62. AES alleges that Dow and Destec Energy provided AES with

false information regarding the Elsta project that was central to AES's valuation of Destec Engineering, and directly resulted in AES paying at least $70 million more than it would have if AES had been provided with accurate information regarding Elsta. *Id.* at ¶¶ 40–46, 62–64. None of the representations and warranties set forth in the Asset Purchase Agreement and incorporated from the Merger Agreement concern any predicted completion date or profit potential for the Elsta project.

Dow denies that there was any fraudulent scheme and disputes AES's principal factual allegations. (D.I. 110, at 4). For purposes of this motion, however, Dow contends that these factual allegations are immaterial.

## C. *The Transaction Documents*

The transaction at issue was initiated by Dow and Destec Energy in October of 1996, when they solicited buyers for Destec Energy. (D .I. 67, ¶ 35). When AES expressed initial interest in the transaction, Destec Energy required AES to sign a Confidentiality Agreement dated October 24, 1996 before receiving Destec Energy's Offering Memorandum and other information about its business. (D.I.111, Exh. A). The Confidentiality Agreement provided that AES would not rely on any information it would receive from Destec Energy during its due diligence investigation, except for those specific representations it negotiated to be made in a definitive agreement:

> We [AES] acknowledge that neither you [Destec Energy], nor Morgan Stanley [Destec Energy's Investment Banker] or its affiliates, nor your other Representatives [including, by definition, Destec Energy's affiliates], nor any of your or their respective officers, directors, employees, agents or controlling persons within the meaning of section 20 of the Securities Exchange Act of 1934, as amended, make any express or implied representations or warranty as to the accuracy or completeness of the Information, and we agree that no such person will have any liability relating to the Information or for any errors therein or omissions therefrom. We further agree that we are not entitled to rely on the accuracy or completeness of the Information and that we will be entitled to rely solely on any representations and warranties as may be made to us in any definitive agreement with respect the Transaction, subject to such limitations and restrictions as may be contained therein.

(D.I.111, Exh. A, ¶ 5).

After executing the Confidentiality Agreement, AES received a copy of the Offering Memorandum (D.I.111, Exh. D), a Supplemental Financial Information document (D.I.111, Exh. E) and other information about Destec Energy. The Offering Memorandum stated that "[o]nly those particular representations and warranties which may be made to a purchaser in a definitive agreement, when, as, and if executed, and subject to such limitations and restrictions as may be specified in such definitive agreement, shall have any legal effect." (D.I.111, Exh. D., p. ii). It also expressly warned that any "statements, estimates and projections provided by Destec with respect to its anticipated future performance ... reflect various assumptions and may not prove to be correct." *Id.* On the very first page, it stated that "the information, including the projections, contained herein" had not been independently verified, that Destec was not making "any express or implied representation or warranty as to the accuracy or completeness of the information contained herein or made available in connection

with any further investigation of Destec," and that this "Memorandum shall not be deemed an indication of the state of affairs of Destec nor shall it constitute an indication that there has been no change in the business or affairs of Destec since the date hereof." *Id.* at p. i. The first page further provided that "[b]y accepting this Memorandum, the recipient acknowledges and agrees to the limitations set forth herein . . . ." *Id.* The Offering Memorandum also noted that its delivery to a limited number of highly qualified bidders was "subject to the prior execution of a Confidentiality Agreement." *Id.*

The Merger Agreement consummating the sale of Destec Energy expressly stated that "[e]xcept for the representations and warranties contained in this Article IV, neither Dow nor any other Person makes any other express or implied representation or warranty on behalf of Dow." (D.I. 111, Exh. B, § 4.6). A parallel provision limits any representations and warranties of Destec Energy to those that appear in the Merger Agreement itself. *Id.* at § 3.20. The Merger Agreement did not contain any representations or warranties regarding the predicted completion date or potential profit for the Elsta project. The Merger Agreement further provided that "[t]his Agreement and the Confidentiality Agreement, and certain other agreements executed by the parties hereto as of the date of this Agreement, constitute the entire agreement, and supersedes all prior agreements and understandings (written and oral) among the parties with respect to the subject matter hereof." *Id.* at § 9.9.

Similarly, the Asset Purchase Agreement signed by AES expressly states that "[e]xcept for the representations and warranties contained in this Article III, neither NGC nor any other Person (as defined in the Merger Agreement) makes any other express or implied representations or warranties on behalf of NGC." (D.I.111, Exh. C, § 3.4). The representations and warranties set forth in the Asset Purchase Agreement and incorporated from the Merger Agreement comprise over twenty single-spaced pages. None of these representations or warranties, however, concern any predicted completion date or potential profit for the Elsta project. The Asset Purchase Agreement further provided that "[t]his Agreement constitutes the entire agreement, and supersedes all prior agreements and understandings (written and oral) among the parties with respect to the subject matter hereof." *Id.* at § 9.9.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted if the Court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, " 'courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties.' " *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981) (citations omitted). Furthermore, any reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Spain v. Gallegos,* 26 F.3d 439, 446 (3d Cir.1994) (citing *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224, 1230 (3d Cir.1993)).

## DISCUSSION

 To state a violation of section 10(b) and Rule 10b–5 of the Exchange Act, Plaintiff must demonstrate that Defendant (1) made a misstatement or an omission of a material fact (2) with scienter (3) in

connection with the purchase or the sale of a security (4) upon which Plaintiff reasonably relied and (5) that Plaintiff's reliance was the proximate cause of Plaintiff's injury. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 174 (3d Cir.2000). Moreover, Plaintiff's reliance on the alleged misstatement or omission must be reasonable, even though Defendant has the burden of proof to show it was not reasonable. *Straub v. Vaisman & Co.*, 540 F.2d 591, 598 (3d Cir.1976). Consequently, the Court of Appeals for the Third Circuit has stated that to recover under section 10(b) and Rule 10b–5, "the plaintiff [must] act reasonably" and that "a sophisticated investor is not barred by reliance upon the honesty of those with whom he deals *in the absence of knowledge* that the trust is misplaced." *Id.* (emphasis added). Thus, "an investor cannot close his eyes to a known risk" and if he is "cognizant of the risk, then there is no liability." *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 530 (7th Cir.1985). Accordingly, a securities action defendant may obtain summary judgment by demonstrating that the plaintiff's reliance on the defendant's statements was unreasonable as a matter of law.

In support of its motion, Dow relies upon the various provisions set forth in the transaction documents. Dow asserts that AES cannot establish that it reasonably relied on the alleged misrepresentations causing its harm because: (1) it expressly agreed that it would not rely on any representations not contained in a final and definitive agreement for a transaction, and (2) although it negotiated for numerous, specific representations and warranties in the definitive agreements, none of the alleged representations cited by AES in the Amended Complaint are contained in the parties' written agreements.

Dow relies principally upon four decisions rendered by Courts of Appeals in support of its motion. AES contends that the cases relied upon by Dow do not bar AES's securities fraud claims. According to AES, the Court should look to Delaware common law to determine whether AES can establish reasonable reliance. However, federal securities cases from this circuit and elsewhere consistently cite federal law in determining the issue of reasonable reliance. *See, e.g., Semerenko*, 223 F.3d at 178–79 (citing only federal cases on issue of reasonable reliance); *Rissman*, 213 F.3d at 383–84. The Court will consider the federal decisions cited by Dow to determine whether the contract provisions in the instant case render Plaintiff's reliance on the alleged misrepresentations unreasonable as a matter of law.

The first case Dow cites is *Rissman v. Rissman*, 213 F.3d 381 (7th Cir.2000). In *Rissman*, the plaintiff, a former minority shareholder of Tiger Electronics, brought a securities fraud action against the majority shareholder after the company was sold for far more than the plaintiff was paid for his stock. *Id.* at 382. The plaintiff claimed that the defendant fraudulently induced him to sell his stock by assuring him that Tiger Electronics would not be sold. *Id.* During negotiations, the defendant refused to make a representation that he would never sell the company. *Id.* at 383. Also, as part of the stock transaction, the plaintiff represented that he had not relied on any prior statements. *Id.*

In granting summary judgment in favor of the defendant, the Court of Appeals for the Seventh Circuit held that "a written anti-reliance clause precludes any claim of deceit by prior representations." *Id.* at 384. The court reasoned that a non-reliance clause "ensures that both the transaction and any subsequent litigation proceed on the basis of the parties' writings, which

are less subject to the vagaries of memory and the risks of fabrication." *Id.*

Second, Dow relies upon *Harsco Corp. v. Segui,* 91 F.3d 337 (2d Cir.1996). In *Harsco,* the Court of Appeals for the Second Circuit affirmed the dismissal of a Rule 10b–5 claim premised on a representation that did not appear in the parties' final agreement. *Id.* at 339. In that case, the parties' agreement contained: (1) numerous other representations and warranties, (2) a clause stating that the sellers "shall not be deemed to have made to Purchaser any representation or warranty other than as expressly made by [the sellers]" in the written agreement itself, and (3) a merger clause stating that the written agreement contains the entire agreement between the parties. *Id.* at 342–43. In holding that the buyer could not sustain a claim for securities fraud premised on a representation that did not appear in the final agreement, the court stated:

> Here there is a detailed writing developed via negotiations among sophisticated business entities and their advisors. That writing, we conclude, defines the boundaries of the transaction. Harsco brings this suit principally alleging conduct that falls outside those boundaries.

*Id.* at 343.

Also, in an opinion authored by now-Justice Breyer, the Court of Appeals for the First Circuit held that a merger clause in the parties' final agreement and the disclaimers in a proxy statement precluded plaintiff from relying on any "pre-Agreement statements" in a securities fraud claim. *Jackvony v. RIHT Fin. Corp.,* 873 F.2d 411, 416 (1st Cir.1989). In *Jackvony,* the court noted that plaintiff was a sophisticated investor who helped draft the written acquisition documents and the proxy statement told plaintiff not to rely upon any such statements. *Id.* The court concluded that these factors militated against any reliance being "reasonable." *Id.*

Similarly, in an opinion authored by now-Justice Ginsburg, the D.C. Circuit held that a merger clause "superced[ing] any and all previous understandings and agreements" barred plaintiffs' securities fraud claim premised on a representation outside the parties' final agreement because such a provision "made any reliance by plaintiffs on prior representations ... unreasonable ." *One–O–One Enters., Inc. v. Caruso,* 848 F.2d 1283, 1286 (D.C.Cir. 1988). The circuit court acknowledged the following observations made by the district court in that case:

> After eight months of vigorous negotiations, the parties reached a final agreement that was lengthy, detailed and comprehensive. During these eight months, many offers, promises and representations were made .... To avoid a misunderstanding and to make clear that the only understanding between the parties was that expressed in the Agreement, the parties agreed that the Agreement "*supersede[d] any and all previous understandings and agreements.*"

*Id.* The court explained that "[w]ere we to permit plaintiffs' use of the defendants' prior representations ... to defeat the clear words and purpose of the Final Agreement's integration clause, 'contracts would not be worth the paper on which they are written.' " *Id.* at 1287.

█ In the Court's view, the facts of this case place it squarely within the precedent of the four cited decisions, and therefore, the Court concludes that the "no representation/non-reliance" clauses in the agreements between Dow and AES are enforceable. The agreements at issue were negotiated by sophisticated parties negotiating at arm's length. AES, Dow and NGC are all substantial companies, and AES describes itself as a company

that "buys and operates power facilities domestically and internationally." (D.I.67, ¶ 8). When transacting business, companies such as these must be able to rely on the written words of their agreements. In sum, the Court is persuaded that the rationale of the four federal circuit court decisions is sound and should be applied here. Thus, the Court will consider whether these clauses are enforceable in light of AES's remaining arguments.

AES contends that the non-reliance and merger clauses are void because they violate Section 29(a) of the Exchange Act. Section 29(a) provides:

> Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.

15 U.S.C. § 78cc (2000).

In support of its argument, AES cites *Rogen v. Ilikon Corp.*, 361 F.2d 260 (1st Cir.1966). In *Rogen*, the plaintiff, an individual shareholder of the defendant company, sued under § 10(b), alleging that he was induced to sell shares of a company back to the company at an unfair price by nondisclosure of positive information regarding the company's prospects. *Rogen*, 361 F.2d at 263. The district court granted summary judgment in part because the sales agreement at issue stated that plaintiff "[was] fully familiar with the business and prospects of the corporation, [was] not relying on any representations or obligations to make full disclosure with respect thereto, and ha[s] made such investigation thereof as [plaintiff] deem[s] necessary." *Id.* at 265. In reversing the district court, the Court of Appeals for the First Circuit held that § 29(a) rendered such a contract provision void. *Id.* at 268.

Dow contends that *Rogen* is distinguishable from the instant case and cites the Second Circuit's decision in *Harsco* to support its position. In *Harsco,* the defendants attempted to analogize the contractual provision and circumstances of *Rogen* to their case. *Harsco,* 91 F.3d at 344. In rejecting this analogy, the Second Circuit noted that the court in *Rogen* "emphasized the disparity in bargaining power between the plaintiff, an individual whom a jury could conclude was 'overtrusting,' and the defendant corporation." *Id.* at 344 (quoting *Rogen,* 361 F.2d at 267–68). In contrast, the parties in *Harsco* were "sophisticated business entities negotiating at arm's length." *Harsco,* 91 F.3d at 344. The Court of Appeals for the Second Circuit reasoned that:

> Harsco bought the representations [in the final agreement] and, according to Sections 2.05 and 7.02, nothing else. This means that there are fourteen pages of representations, any of which, if fraudulent, can be the basis of a fraud action against the sellers. But Harsco specifically agreed that representations not made in those fourteen pages were not made.

*Id.*

The Court finds the facts in *Harsco* to be closer to the facts of this dispute and concludes that the reasoning of *Harsco* is more persuasive than *Rogen.* Here, the Merger Agreement included more than twenty pages of specific representations and warranties. (D.I.111, Exh. B, Art. III, IV). As previously noted, this is not a case of an unsophisticated and unsuspecting buyer. Indeed, AES, Dow and NGC are all "Fortune 500" companies negotiating at arm's length. In these circumstances, the Court concludes that Section 29(a) of the Exchange Act does not bar the enforcement of a clause disclaiming representations and warranties not appearing in

a final agreement negotiated between sophisticated parties in an arm's length transaction.

■ AES' final argument is that summary judgment at this juncture is premature. In *Straub v. Vaisman & Co.*, 540 F.2d 591 (3d Cir.1976), the Court of Appeals for the Third Circuit stated that a variety of factors should be considered in determining whether plaintiff's reliance was reasonable. *Straub*, 540 F.2d at 598. There are five *Straub* factors: (1) the existence of a fiduciary relationship; (2) the plaintiff's opportunity to detect the fraud; (3) the sophistication of the plaintiff; (4) the existence of a longstanding business or personal relationship; and (5) access to the relevant information. *Id.; Kline v. First Western Gov't Sec., Inc.*, 24 F.3d 480, 488 (3d Cir.1994).

Applying the *Straub* factors to this case, the Court first concludes that AES did not have a fiduciary relationship with Dow. Second, with respect to the opportunity to detect the fraud and the access to relevant information, the Amended Complaint reveals that AES received "detailed" documentation (including access to an entire "document room" at Destec) and access to Destec employees around the world. (D.I.67, ¶¶ 35, 37–38, 40–44, 62). In fact, the Confidentiality Agreement was executed for the very purpose of giving AES access to non-public information, subject to AES' written understanding that not all such information would be reliable. AES was also free to seek information from numerous third parties, such as the Elsta project's contractors, independent engineers, regulators, financiers and the two Dutch utilities owning half the plant, about the likelihood of the project finishing on schedule. Third, AES is a sophisticated business entity that was represented in the transaction by outside counsel. Fourth, AES does not assert the presence of any

long-standing business or personal relationships. In sum, application of the *Straub* factors to the instant case leads the Court to conclude that Dow has established that any reliance by AES on the alleged misrepresentations was unreasonable as a matter of law.

■ Because the Court concludes AES' claims under the federal securities laws fail as a matter of law, the Court must consider whether to exercise supplemental jurisdiction over the Texas state law claims asserted by AES. Where all federal claims are dismissed before trial, the court should dismiss the state law claims as well, for lack of supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir.1993). Therefore, the Court will decline to exercise supplemental jurisdiction over the Texas state law claims asserted by AES.

## CONCLUSION

For the reasons discussed, the Court will grant Defendant's Motion for Summary Judgment (D.I.109) as it pertains to Plaintiff's federal law claims, and the Court will decline to exercise supplemental jurisdiction over Plaintiff's claims arising under Texas state law.