15 F.3d 1484
 63 Fair Empl.Prac.Cas. (BNA) 1143,
63 Empl. Prac. Dec. P 42,850, 62 USLW 2474
 EXECUTIVE SOFTWARE NORTH AMERICA, INC.; Craig Jensen;
Sally Jensen, Petitioners,
v.
UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF
CALIFORNIA, Respondent,
Donna L. Page, Real Party in Interest.
 No. 93-70679.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 7, 1993.
Decided Jan. 27, 1994.
Mandate Recalled and Vacated April 18, 1994.
 
 Belle C. Mason, Knee & Mason, Los Angeles, California, for the petitioners.
 David Baca, Jr., Lewis, Marenstein, Wicke & Sherwin, Woodland Hills, California, for the Real Party in Interest.
 Petition for Writ of Mandamus to Review an Order Entered by the United States District Court for the Central District of California.
 Before: TANG, D.W. NELSON, and LEAVY, Circuit Judges.
 D.W. NELSON, Circuit Judge:
 
 
 1
 Executive Software North America, Inc., Craig Jensen, and Sally Jensen ("Petitioners") petition this court for a writ of mandamus to compel the United States District Court for the Central District of California to retain jurisdiction over certain pendent state law claims filed in an employment discrimination suit against them by the plaintiff-real-party-in-interest, Donna Page. Petitioners[1] contend that, in remanding the plaintiff's pendent state law claims, the district court misapprehended the scope of the supplemental jurisdiction statute, 28 U.S.C.A. Sec. 1367 (West 1993), and failed to undertake the case-specific analysis required by that statute. In addition, Petitioners contend that, on a proper application of section 1367, a remand of their state law claims cannot be justified. Finally, Petitioners assert that mandamus is their only means of remedying this asserted error. We grant the writ, but on narrower grounds than urged by the parties.
 
 Factual and Procedural Background
 
 2
 On April 8, 1993, Donna Page filed a complaint in state court against the petitioners. She claimed to have experienced several acts of discrimination during her employment with Executive Software. Specifically, Page, a black female, alleged that the company required all of its employees to study the teachings of the Church of Scientology written by L. Ron Hubbard. Page contends that when she refused to comply, she was charged with having made a number of errors in her work, and that when she attempted to contest the charges she was denied an opportunity to do so and was terminated. Page further asserts that the charges and subsequent termination were a mere "subterfuge for illegal discrimination against non believers in the Church of Scientology, women and racial minorities."
 
 
 3
 In her complaint, Page alleged two federal causes of action, (1) a claim under Title VII, 42 U.S.C. Sec. 2000e et seq. (1988), and (2) a claim under 42 U.S.C. Sec. 1983 (1988), as well as three state causes of action, including (1) a claim for unlawful religious and racial discrimination under the California Fair Employment and Housing Act ("FEHA"), Cal.Gov't Code Sec. 12940 (Deering 1982 & Supp.1992), (2) a claim of wrongful termination in violation of the California Constitution, Art. I Sec. 7(a), and (3) a claim for negligent supervision.
 
 
 4
 Based on the two federal claims, the defendants removed the action to federal court. Subsequently, on May 20, 1993, the district court issued an order sua sponte to show cause why the three state law claims should not be remanded to state court. The court stated that "jurisdiction over the state claims depends upon whether this Court exercises its discretion to retain [them]," and admonished the parties to consider that "the Supreme Court defined the parameters of a federal court's supplemental jurisdiction in United Mine Workers v. Gibbs, 383 U.S. 715 [86 S.Ct. 1130, 16 L.Ed.2d 218] (1966)." After noting the requirements set forth in Gibbs for exercising supplemental jurisdiction, the Court added:
 
 
 5
 Even if [the Gibbs test is] met, however, a federal court has discretion to decline jurisdiction over state law claims if, for instance, the state claims substantially predominate, the state claims involve novel or complex issues of state law, trial of the state and federal claims together is likely to result in jury confusion, or retention of the state claims requires the expenditure of substantial additional judicial time and effort. [Gibbs, 383 U.S.] at 726-27 [86 S.Ct. at 1139]; see also 28 U.S.C. Sec. 1367(c); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 [108 S.Ct. 614, 98 L.Ed.2d 720] (1988).
 
 
 6
 The Removing Party(ies) should also be aware that this Court does not interpret the 1990 enactment of Section 1367 as restricting the discretionary factors set forth in Gibbs. Rather, this Court interprets Section 1367 as merely allowing this Court, at its discretion, to exercise jurisdiction over supplemental parties, which was previously foreclosed by Finley v. United States, 490 U.S. 545 [109 S.Ct. 2003, 104 L.Ed.2d 593] (1989).
 
 
 7
 The district court thereafter remanded the three state law claims, but provided no reasons.
 
 Analysis
 
 8
 This petition presents several issues. First, we must determine whether we may review the district court's order in this case and if mandamus properly is invoked. Second, we must determine whether the district court clearly erred in its interpretation and application of the supplemental jurisdiction statute, 28 U.S.C.A. Sec. 1367 (West 1993), and if other factors counsel in favor of issuing the writ.
 
 I. Reviewability
 
 9
 On its face, section 1447(d) of the Judicial Code would appear to bar review of the remand order in this case. That provision provides, with one exception not relevant here, that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. Sec. 1447(d) (1988). In Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), however, the Supreme Court held that section 1447(d) barred review only of those remand orders "issued under Sec. 1447(c) and invoking the grounds specified therein--that removal was improvident and without jurisdiction," id. at 346, 96 S.Ct. at 590; see also Gravitt v. Southwestern Bell Tel. Co., 430 U.S. 723, 723-24, 97 S.Ct. 1439, 1439-40, 52 L.Ed.2d 1 (1977) (per curiam) (finding unreviewable a remand order that purported to rely on Sec. 1447(c)). In this circuit, a district court's order remanding pendent state law claims on discretionary grounds is not considered one made pursuant to section 1447(c). See Lee v. City of Beaumont, 12 F.3d 933, 935-36 (9th Cir.1993); Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1539 (9th Cir.1992).
 
 
 10
 In this case, the district court did not provide reasons for remanding the plaintiff's state law claims. In instances of ambiguity, this circuit "look[s] to the substance of the order to determine whether it was issued pursuant to section 1447(c)." Schmitt v. Insurance Co. of N. Am., 845 F.2d 1546, 1549 (9th Cir.1988). Here, the court retained jurisdiction over the federal claims asserted by the plaintiff, and we have held that asserting "original jurisdiction over at least one of the claims" "removes the possibility that a remand order is issued pursuant to section 1447(c)." Kunzi v. Pan Am. World Airways, Inc., 833 F.2d 1291, 1295 (9th Cir.1987). Accordingly, the remand order in this case is reviewable.
 
 
 11
 "Even though the order is reviewable, we may review the order only pursuant to the proper type of review." Lee, 12 F.3d at 935. The Supreme Court in Thermtron held that remand orders, because they are not "final judgment[s] reviewable by appeal" are properly reviewed by " 'mandamus to compel action, and not by writ of error to review what has been done.' " Thermtron, 423 U.S. at 353, 96 S.Ct. at 594 (quoting Railroad Co. v. Wiswall, 90 U.S. (23 Wall.) 507, 508, 23 L.Ed. 103 (1875)). We have recognized a narrow exception to the availability of mandamus when the remand order can be appealed as a "collateral order" under the doctrine of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), see, e.g., Lee, 12 F.3d at 935-36 (citing Whitman v. Raley's Inc., 886 F.2d 1177, 1180 (9th Cir.1989)). If the order properly is appealable as a collateral order, then mandamus is barred. See, e.g., Survival Systems v. United States Dist. Court, 825 F.2d 1416, 1418 (9th Cir.1987), cert. denied, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988); Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 276-78 (9th Cir.1984); see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 8 n. 6, 103 S.Ct. 927, 933 n. 6, 74 L.Ed.2d 765 (1983) ("[F]undamentally, a court of appeals has no occasion to engage in extraordinary review by mandamus 'in aid of [its] jurisdictio[n],' 28 U.S.C. Sec. 1651, when it can exercise the same review by a contemporaneous ordinary appeal."); cf. Badham v. United States Dist. Court, 721 F.2d 1170, 1171 (9th Cir.1983) ("[W]e may not exercise mandamus jurisdiction over an action which is subject to direct appeal." (citing Moses H. Cone )), cert. denied, 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985).
 
 
 12
 Petitioners contend that the collateral order doctrine is inapplicable because the district court did not resolve an issue of substantive law, but merely declined supplemental jurisdiction as a matter of discretion. Although we note that other circuits construe the collateral order doctrine in this context more broadly, see, e.g., Travelers Ins. v. Keeling, 996 F.2d 1485, 1489 (2d Cir.1993) (finding an order collateral if it "determines whether the dispute will be ... litigated in state court"), and more narrowly, see, e.g., Doughty v. Underwriters at Lloyd's, 6 F.3d 856, 862-64 (1st Cir.1993); Garcia v. Island Program Designer, Inc., 4 F.3d 57, 60 (1st Cir.1993); see also PAS v. Travelers, 7 F.3d 349, 352-53 (3d Cir.1993) (rejecting the doctrine altogether), in this circuit, to qualify as "collateral" the order must "resolve[ ] the merits of a matter of substantive law apart from any jurisdictional decision," e.g., Survival Systems, 825 F.2d at 1418 (emphasis added); Whitman, 886 F.2d at 1180. While we do not know the precise reasons that compelled the district court to remand the plaintiff's state law claims, the basis of the remand was clearly a discretionary refusal to entertain those claims. See Show Cause Order at 1 ("[J]urisdiction over the state claims depends on whether this Court exercises its discretion to retain [them]."). This is not a decision on a matter of substantive law apart from a jurisdictional decision. See Lee, 12 F.3d at 935-36.
 
 
 13
 In addition, Petitioners did not attempt certification through the mechanism provided by 28 U.S.C. Sec. 1292(b) before seeking mandamus.[2] However, we do not believe seeking certification is a prerequisite for invoking mandamus. Even if the remand order meets the section 1292(b) criteria, the district court must agree to certify the order (a decision that itself is unreviewable), and the court of appeals must exercise its discretion to entertain the action before a section 1292(b) appeal can proceed. Clearly, this is not a "contemporaneous ordinary appeal," Cone, 460 U.S. at 8 n. 6, 103 S.Ct. at 933 n. 6 (emphasis added), that would turn the writ into a "substitute for appeal," e.g., Schlagenhauf v. Holder, 379 U.S. 104, 110, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). Moreover, requiring an attempt to obtain certification before seeking mandamus would be contrary to our practice of occasionally treating appeals that fail to meet the strict requirements of the "collateral order" doctrine as writs of mandamus. See, e.g., Lee, 12 F.3d at 936; National Org. for Reform of Marijuana Laws v. Mullen, 828 F.2d 536, 541 (9th Cir.1987) (citing Hartland v. Alaska Airlines, 544 F.2d 992, 1001 (9th Cir.1976)); Price v. PSA, Inc., 829 F.2d 871, 873-74 (9th Cir.1987) (finding only mandamus appropriate when both a petition for the writ and an appeal under the collateral order doctrine were attempted), cert. denied 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988); see also Corcoran v. Ardra Ins. Co., Ltd., 842 F.2d 31, 35 (2d Cir.1988) (treating an improvident appeal as a writ of mandamus). The instances in which we have required section 1292(b) certification clearly have been based on prudential considerations. See, e.g., Mohasco Indus., Inc. v. Lydick, 459 F.2d 959, 960 (9th Cir.1972).
 
 
 14
 Finding no bar to our review of the petition, we turn to its merits.
 
 
 15
 II. Should Mandamus Issue?
 
 
 16
 Mandamus is an extraordinary remedy that may be obtained "only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967) (quoting Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)). To issue the writ, the court must be " 'firmly convinced that the district court has erred,' " Valenzuela-Gonzalez v. United States Dist. Court, 915 F.2d 1276, 1279 (9th Cir.1990) (quoting Seattle Times v. United States, 845 F.2d 1513, 1515 (9th Cir.1988)), and that "the petitioner's right to the writ is 'clear and indisputable,' " id. (quoting Kerr v. United States Dist. Court, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976)). Consequently, we review for clear error and not abuse of discretion. See, e.g., Survival Systems, 825 F.2d at 1418-1419 nn. 1-2; Badham, 721 F.2d at 1171 ("[O]n direct appeal we review the district court's order under an 'abuse of discretion' standard while under mandamus jurisdiction we employ a more stringent standard of review." (citation omitted)); cf. Schlagenhauf, 379 U.S. at 110, 85 S.Ct. at 238 ("The writ is appropriately issued ... when there is 'usurpation of judicial power' or a clear abuse of discretion[.]' " (quoting Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953))).
 
 
 17
 This circuit has adopted five "objective principles," United States v. Harper, 729 F.2d 1216, 1221-22 (9th Cir.1984), for guiding determinations concerning when mandamus should issue: "(1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires"; "(2) The Petitioner will be damaged or prejudiced in a way not correctable on appeal"; "(3) The district court's order is clearly erroneous as a matter of law"; "(4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules"; and "(5) The district court's order raises new and important problems, or issues of law of first impression." Valenzuela-Gonzalez, 915 F.2d at 1279 (quoting In re Allen, 896 F.2d 416, 419-20 (9th Cir.1990) (quoting Bauman v. United States, 557 F.2d 650, 654-55 (9th Cir.1977))).
 
 
 18
 Although we have written of these five factors that "no single [one] is determinative," id. at 1279 (citing Bauman, 557 F.2d at 654-55), and that "all five factors need not be satisfied at once," id. (citing In re Cement Antitrust Litig., 688 F.2d 1297, 1301 (9th Cir.1982), aff'd mem. sub nom. Arizona v. Ash Grove Cement Co., 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983)), it is clear that the third factor, the existence of clear error as a matter of law, is dispositive, see Survival Systems, 825 F.2d at 1418 & 1419 n. 2 (finding all other factors irrelevant after concluding the district court's conclusions were legally correct); cf. Harper, 729 F.2d at 1222 (pointing out that the guidelines " 'are not meant to supplant reasoned and independent analysis by appellate courts' " (quoting In re Cement, 688 F.2d at 1301)). Accordingly, we first examine whether the district court clearly erred. After this discussion, we examine whether the other factors in the mandamus calculus point in favor of granting the writ.
 
 
 19
 A. Did the District Court Commit Clear Error?
 
 
 20
 The district court provided no reasons for its remand. However, in its Show Cause Order, the court stated that it did not "interpret Section 1367 as restricting the discretionary factors set forth in Gibbs. Rather, this court interprets Section 1367 as merely allowing this Court, at its discretion, to exercise jurisdiction over supplemental parties, which was previously foreclosed by Finley v. United States, 490 U.S. 545 [109 S.Ct. 2003, 104 L.Ed.2d 593] (1989)." In addition, the district court listed a number of factors that it took as illustrative as permissible bases for remanding pendent state law claims under Gibbs and its progeny, including whether "retention of the state claims requires the expenditure of additional judicial time and effort."
 
 
 21
 Based on the text, structure, legislative history, and apparent purpose of section 1367, we find this interpretation of the statute erroneous. Not only does section 1367(a) create a presumption that supplemental jurisdiction should be asserted unless one of the categories specifically enumerated in section 1367(c) applies, but also at least one of the section 1367(c) categories is narrower than its Gibbs counterpart. Consequently, the district court clearly erred by relying on the wrong factors for guiding its discretion.
 
 
 22
 1. The Gibbs Test and the Origins of Section 1367
 
 
 23
 United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), broadly authorized the federal courts to assert jurisdiction over state law claims when "[t]he state and federal claims ... derive from a common nucleus of operative fact," the claims are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding," and the federal issues are "substantial[ ]." Id. at 725, 86 S.Ct. at 1138. These three factors confer power on the federal courts under Article III to hear the entire "constitutional" case. See id. The Court added critically, however, that:
 
 
 24
 [Such] power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants.
 
 
 25
 Id. at 726, 86 S.Ct. at 1139 (footnote omitted). Applying this standard, the Court listed several situations in which declining pendent jurisdiction would be appropriate: (1) when "[n]eedless decisions of state law should be avoided"; (2) when the federal claims are dismissed before trial, or, during the course of a case, when it appears "that a state law claim constitutes the real body of a case, to which the federal claim is only an appendage"; (3) when "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought"; and finally (4) when there are reasons "independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief." Id. at 726-27, 86 S.Ct. at 1139.
 
 
 26
 Gibbs subsequently was interpreted as conferring significant discretion on the federal courts to decline or assert jurisdiction over pendent state law claims, limited only by the values of "judicial economy, convenience, fairness, and comity." See, e.g., Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988) ("As articulated by Gibbs, the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." (emphasis added)); see also id. at 351, 108 S.Ct. at 619 ("[G]ibbs establishes that the pendent jurisdiction doctrine is designed to enable courts to handle cases involving state-law claims in the way that will best accommodate the values of economy convenience, fairness and comity, and Gibbs further establishes that the Judicial Branch is to shape and apply the doctrine in that light." (emphasis added)). Numerous lower court decisions illustrate this broad view of discretion. See, e.g., Harrell v. 20th Century Ins. Co., 934 F.2d 203, 205-06 (9th Cir.1991) (emphasizing the importance the Court in Gibbs and Carnegie-Mellon placed on the values of "economy, convenience, fairness, and comity"). See generally 13B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, Sec. 3567.1, at 122-127 & nn. 13-16 (1984) (citing cases); id. at 26-27 nn. 13-16 (Supp.1992) (same).
 
 
 27
 As noted by many commentators, the primary deficiency of Gibbs was that it blurred the question of the power of the federal courts to entertain pendent claims under Article III with the question of congressional statutory authorization of such jurisdiction. See generally Paul M. Bator, Daniel J. Meltzer, Paul J. Mishkin & David L. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 1044-52 (3d ed. 1988) [hereinafter Hart and Wechsler]. The Supreme Court's subsequent decision in Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), highlighted the problems of an absence of firm statutory authority, for the Court refused to find the assertion of jurisdiction over pendent parties permissible absent congressional authorization even when federal jurisdiction was exclusive, see id. at 549-56, 109 S.Ct. at 2006-10.
 
 
 28
 Prior to Finley, a number of lower federal courts had permitted pendent-party jurisdiction as long as Congress had not "expressly or by implication negated its existence," Aldinger v. Howard, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976). See generally 13B Wright & Miller, supra, Sec. 3567.2 at 30-32 & n. 44 & Supp.1992 at 36 nn. 34-35 (collecting cases). Finley, however, appeared to articulate the opposite presumption: that unless Congress affirmatively conferred pendent-party jurisdiction, it would not be permitted. Indeed, a number of courts interpreted Finley "as putting an end to [pendent-party] jurisdiction," id. Sec. 3567.2, at 30; see also id. at 32-33 n. 49 (citing cases), as well as threatening aspects of ancillary jurisdiction, see id. Sec. 3567.2, at 30. As a result, Finley evoked severe criticism. See generally Hart and Wechsler, supra, at 134-36 (Supp.1993); Richard B. Freer, Compounding Confusion and Hampering Diversity: Life after Finley and the Supplemental Jurisdiction Statute, 40 Emory L.J. 445, 464-68 (1991). In response, the Federal Court Study Committee, established by Congress in 1988, made an express recommendation to provide a statutory basis for pendent, ancillary, and pendent-party jurisdiction in a "supplemental" jurisdiction statute. See Report of the Federal Court Study Committee 47-48 (Apr. 2, 1990) [hereinafter FCSC Report]. Subsequently, Congress enacted such a statute, 28 U.S.C. Sec. 1367 (1993), as part of the Judicial Improvements Act of 1990, Pub.L. No. 101-650, 104 Stat. 5089.[3]
 
 
 29
 2. The Relationship of Section 1367 to Gibbs
 
 
 30
 Initially, we must determine whether, as Petitioners contend, the section 1367(c) factors are the exclusive means by which supplemental jurisdiction, if permitted by sections 1367(a) and (b), can be declined, and whether the scope of those factors is narrower than the Gibbs standard. "We begin our analysis, as we must," with the statute's text and structure. E.g., Mount Graham Red Squirrel v. Madigan, 954 F.2d 1441, 1451-1453 (9th Cir.1992).
 
 
 31
 a. Statutory Text and Structure
 
 1.
 
 32
 On its face, section 1367 appears to make at least two changes to the Gibbs standard. First, although it retains the basic division between power and discretion, the structure of 1367 reveals a different emphasis. Gibbs stressed that courts have discretion to exercise the power conferred upon them under Article III to hear pendent state law claims. See Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139. Section 1367(a), however, appears to make supplemental jurisdiction mandatory by its language that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. Sec. 1367(a) (West 1993) (emphasis added). Under the statute, if power is conferred under section 1367(a), and not prohibited by section 1367(b),[4] the district courts exercise discretion only in deciding whether to decline that jurisdiction under one of the four criteria specifically enumerated in Sec. 1367(c). These are:
 
 
 33
 (1) the claim raises a novel or complex issue of State law,
 
 
 34
 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
 
 
 35
 (3) the district court has dismissed all claims over which it has original jurisdiction, or
 
 
 36
 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
 
 
 37
 28 U.S.C.A. Sec. 1367(c) (West 1993).
 
 
 38
 We agree with a number of courts that have found this structural difference evinces an intent on the part of Congress to create a presumption that, if power exists under section 1367(a) and is not stripped by section 1367(b), supplemental jurisdiction must be asserted by a district court unless a factor specifically listed in section 1367(c) applies. See, e.g., Growth Horizons, Inc. v. Delaware County, 983 F.2d 1277, 1285 n. 14 (3d Cir.1993) ("The language in Sec. 1367 expressly ... states that ... federal courts shall exercise supplemental jurisdiction over pendent claims arising out of the same case or controversy and may decline to exercise jurisdiction [as provided by Sec. 1367(c) ]." (emphasis in original));[5] LaSorella v. Penrose Saint Francis Healthcare Sys., 818 F.Supp. 1413, 1415-16 (D.Colo.1993); Godfrey v. Perkin-Elmer Corp., 794 F.Supp. 1179, 1184 (D.N.H.1992) ("[If] the court finds that it has the power to exercise supplemental jurisdiction over plaintiff's state law claims [it must exercise that jurisdiction] subject only to the narrow circumstances detailed by Congress."); Cedillo v. Valcar Enters. & Darling Delaware Co., 773 F.Supp. 932, 939 (N.D.Tex.1991) ("If the claim is within the court's supplemental jurisdiction, the court must exercise such jurisdiction unless one of the four categorical exceptions in Sec. 1367(c) is satisfied." (emphasis added)); cf. Picard v. Bay Area Regional Transit Dist., 823 F.Supp. 1519, 1523 (N.D.Cal.1993) (conducting the two step analysis prescribed by the statute's structure). We further note that this is the view accepted by most commentators. See, e.g., 13B Wright & Miller, supra, Sec. 3567.3, at 39 (Supp.1992) ("The circumstances in which a court may exercise discretion to refuse to hear a case within its supplemental jurisdiction are quite strictly defined."); John B. Oakley, Recent Changes in the Law of Federal Jurisdiction and Venue: The Judicial Improvements Acts of 1988 and 1990, 24 U.C.Davis L.Rev. 735, 766-67 (1991) ("By the juxtaposition of section 1367(a) and 1367(c) Congress appears to have created a strong presumption in favor of the exercise of supplemental jurisdiction."); David D. Siegel, Practice Commentary, 28 U.S.C.A. Sec. 1367 comment, at 235-36 (West 1993).
 
 
 39
 Moreover, at least one of the discretionary factors provided in the statue for declining supplemental jurisdiction is narrower than its Gibbs counterpart. Although Gibbs, as discussed above, was interpreted as permitting a district court to decline or exercise jurisdiction over pendent state law claims when to do so would be consistent with the values of "economy, convenience, fairness, and comity," the catch-all provided in section 1367(c)(4) permits a court to decline supplemental jurisdiction only when in "exceptional circumstances, there are other compelling reasons for declining jurisdiction," 28 U.S.C.A. Sec. 1367(c)(4) (West 1993) (emphasis added). As a result, most commentators, and the few courts that have considered the question, have concluded that section 1367(c)(4) is narrower than the Gibbs catch-all. See, e.g., LaSorella, 818 F.Supp. at 1415-17; Denis F. McLaughlin, The Federal Supplemental Jurisdiction Statute--A Constitutional and Statutory Analysis, 24 Ariz.St.L.J. 849, 977 & n. 619 (1992); Arthur D. Wolf, Codification of Supplemental Jurisdiction: Anatomy of a Legislative Proposal, 14 W.New Eng.L.Rev. 1, 25 (1993); see also Picard, 823 F.Supp. at 1527 (interpreting section 1367(c)(4) as requiring "sufficiently compelling" reasons for declining jurisdiction but not citing Gibbs in conducting this analysis); Lent v. Mills, 1991 WL 239944, at * 6-* 7, 1991 U.S.Dist. LEXIS 16512, at * 20-* 21 (N.D.N.Y. Nov. 10, 1991) (same); cf. Cedillo, 773 F.Supp. at 942 (suggesting that the section 1367(c) factors are narrower than Gibbs ); Rosen v. Chang, 758 F.Supp. 799, 803 n. 6 (D.R.I.1991) (noting that "[o]n its face, 28 U.S.C. Sec. 1367(c) seems to indicate that a court should decline jurisdiction ... only in unusual circumstances").[6]
 
 2.
 
 40
 Other courts have come to a different conclusion. For instance, the Seventh Circuit has concluded that "the new statute [was] intended to codify rather than to alter the judge-made principle[ ] of pendent ... jurisdiction." Brazinski v. AMOCO Petroleum Additives Co., 6 F.3d 1176, 1182 (7th Cir.1993) (emphasis added); see also Palmer v. Schwan's Sales Enters., Inc., 1993 WL 390053, at * 1-* 5, 1993 U.S.Dist. LEXIS 14069, at * 4-* 12 (D.Kan. Sep. 27, 1993) (stating that "[s]ection 1367(c) codifies the discretionary basis [identified in Gibbs ] for declining pendent jurisdiction" and interpreting section 1367(c)(4) by reference to the Gibbs catch-all); cf. Whalen v. Carter, 954 F.2d 1087, 1097 n. 10 (5th Cir.1992) ("It is unclear whether [section 1367] merely codifies the pendent jurisdiction doctrine or actually changes the doctrine in some fashion."); Pro-Choice Network v. Project Rescue, 828 F.Supp. 1018, 1027 n. 7 (W.D.N.Y.1993) (noting that "the statute providing for supplemental jurisdiction essentially codified existing caselaw on the subject of pendent jurisdiction" (alternations and internal quotations omitted)). Thus, it is necessary to examine the legislative history to determine if congressional intent is clearly expressed. See, e.g., Crandon v. United States, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990); Mount Graham Red Squirrel, 954 F.2d at 1452.
 
 
 41
 b. Legislative History and Statutory Purpose
 
 
 42
 Section 1367 was passed as Sec. 310 of Title III of the Judicial Improvements Act of 1990, Pub.L. No. 101-650, 104 Stat. 5089, 5113-14 (1990). The intent of Congress, apparently, was "to implement the noncontroversial recommendations of the Federal Courts Study Committee," 150 Cong.Rec. H13313 (daily ed. Oct. 27, 1990) (statement of Rep. Kastenmeier), which was charged in 1988 with undertaking a complete study of the federal and state court systems, see Judicial Improvements and Access to Justice Act of 1988, Pub.L. No. 100-702, 120 Stat. 4642, 4644. The Federal Court Study Committee, although recommending the codification of supplemental jurisdiction, did not prepare a statute. See FCSC Report, supra, at 47-48. Rather, the statute was drafted by a number of law professors and underwent several revisions before passage. See generally Wolf, supra, at 16-20. In the end, however, section 1367(c) received only one paragraph in the House Report that accompanied the final version of the statute:
 
 
 43
 [Section 1367] codifies the factors that the Supreme Court has recognized as providing legitimate bases upon which a district court may decline jurisdiction over a supplemental claim. Subsection (c)(1)-(3) codifies the factors recognized as relevant under current law. Subsection (c)(4) acknowledges that occasionally there may exist other compelling reasons for a district court to decline supplemental jurisdiction, which the subsection does not foreclose a court from considering in exceptional circumstances.
 
 
 44
 H.R. No. 734, 101st. Cong., 2d Sess. 29 (1990), reprinted in 1990 U.S.C.C.A.N. 6802, 6860, 6875 [hereinafter House Report].[7]
 
 
 45
 This paragraph has its defects. On the one hand, it states that section 1367(c) as a whole codifies the factors recognized by Gibbs and its progeny for declining to exercise supplemental jurisdiction, but specifically separates section 1367(c)(1)-(3) from section 1367(c)(4) and thereby implies that the latter is not one "recognized under current law." Thus, this passage does not contradict our conclusion that section 1367(c)(4) was not intended to restate the preexisting Gibbs standard. Indeed, the last sentence of the passage supports the conclusion that section 1367(c)(4) means precisely what it says: that outside of remands or dismissals based upon section 1367(c)(1)-(3), there must be "compelling reasons" in "exceptional circumstances" to justify not exercising supplemental jurisdiction. Accordingly, the most that can be said of the House Report is that, as one commentator has put it, it is "misleading" "insofar as it characterizes the subsection (c) factors as simply a restatement of the factors discussed in Gibbs as pertinent to the district court's decision." Oakley, supra, at 767 n. 118 (emphasis added).[8]
 
 
 46
 That section 1367(c)(4) narrows the Gibbs catch-all is also strongly supported by a comparison of the final version of section 1367(c)(4) with the version of the statute submitted by Professors Thomas Rowe, Stephen Burbank, and Thomas Mengler. In this prior version, prepared in response to the original draft of the statute which contained no catch-all, section 1367(c) read almost precisely as it does now except that subsection 1367(c)(4) provided that supplemental jurisdiction may be declined if "there are other appropriate reasons, such as judicial economy, convenience, and fairness to the litigants, for declining jurisdiction." Federal Courts Study Committee Implementation and Civil Justice Report Act: Hearings on H.R. 5381 Before the Subcomm. on Courts, Intellectual Property, and the Administration of Justice, 101st Cong., 2d Sess. 722 (1991) [hereinafter Hearings]. This version of section 1367(c)(4), which ultimately was rejected, of course restated the Gibbs catch-all. The change from the Gibbs catch-all to a "compelling reason" standard in the final text of the statute strongly indicates that the two standards are not coextensive, but that the latter is narrower.[9]
 
 
 47
 Finally, although it is true that Sec. 1367(a) evinces an intent "to ratify and incorporate[ ] the constitutional analysis the Supreme Court made in the Gibbs case," 13B Wright & Miller, supra, Sec. 3567.3, at 39 (Supp.1992) (emphasis added), this does not require the conclusion that Congress made the same sweeping incorporation with respect to how district courts were to exercise their discretion. As discussed above, section 1367 was enacted in large measure to resurrect pendent-party jurisdiction after the Supreme Court's apparent rejection of it in Finley See supra pp. 1490-91. The Federal Courts Study Committee Report, however, evinces the broader goal of providing a firm statutory base for supplemental jurisdiction generally, see FCSC Report, supra, at 47-48, and the specific statutory structure chosen reveals a purpose to have that jurisdiction exercised unless quite specific criteria (those set forth in sections 1367(a), (b) and (c)) indicate to the contrary.[10]
 
 
 48
 Consistent with this objective, another purpose of the Act was to cabin the discretion enjoyed by the lower courts under Gibbs to dismiss pendent state law claims. Commentators have noted that prior to the enactment of Sec. 1367(c), the vague Gibbs formula was used in a hostile manner by some district courts confronted with civil rights cases. By "dismiss[ing] supplemental claims, often under the guise of efficiency and fairness," judges could force a civil rights plaintiff to pursue bifurcated proceedings. E.g., McLaughlin, supra, at 977 n. 619. This concern, in fact, was voiced by one of the principle drafters of section 1367. See Hearings, supra, at 708 (Letter of Prof. Thomas M. Mengler) (expressing trepidation at permitting courts to dismiss state law claims when they predominate because of "what the courts have done in Title VII and ADEA cases"). Consequently, the legislative history and purposes that animated the statute, reinforce the textual analysis.
 
 
 49
 c. Conclusion
 
 1.
 
 50
 We conclude that section 1367 creates a presumption that supplemental jurisdiction should be asserted unless the specific factors enumerated in section 1367(c) are invoked, and that section 1367(c)(4) is narrower than the Gibbs catch-all. Therefore, the district court clearly erred. First, the district court stated that it did not believe that section 1367(c) altered the scope of its discretion under Gibbs and failed to recognize that section 1367(a) compelled the exercise of supplemental jurisdiction unless a section 1367(c) factor applied. Second, the court's description of the factors that it believed would justify an exercise of discretion not to entertain the state law claims included situations in which "retention of the state claims [would] require[ ] the expenditure of substantial judicial time and effort." Because 1367(c)(4) narrows the Gibbs catch-all, however, reliance on this factor alone would have been impermissible.
 
 2.
 
 51
 The fact that the district court applied the wrong legal standard would not require us necessarily to vacate the remand order if we could determine from the remand order that the factors that the court did rely upon were permissible ones. Cf. Hondo Nat'l Bank v. Gill Savs. Ass'n, 696 F.2d 1095, 1102 (5th Cir.1983). In this case, however, such a determination is infeasible, because the district court failed to provide reasons for its decision and the basis is not self evident. Accordingly, we turn to whether the other factors in the mandamus calculus indicate that the writ should issue to correct the district court's errors.
 
 
 52
 B. Is there Unrectifiable Prejudice?
 
 
 53
 We agree with Petitioners that failure to issue mandamus if otherwise appropriate would result in prejudice that could not be rectified on appeal. Permitting the remand order to stand would result in splitting the adjudication of the plaintiff's claim between the state and federal systems; this would impose a significant burden on both parties. Moreover, due to the closely related nature of the state and federal causes of action in this case, there is a strong possibility that the action that first comes to judgment will have issue-preclusive effect on the other action. Finally, the remand order effectively is unappealable after final judgment because once the state court proceedings have begun, it is highly unlikely that they could be enjoined on the grounds that the district court originally erred in failing to assert jurisdiction over the state law claims.
 
 
 54
 C. Are there Other Adequate Means to Attain Relief?
 
 
 55
 As noted above, Petitioners failed to seek certification pursuant to section 1292(b). Arguably, then, Petitioners have an alternative "adequate means ... to attain the relief ... desired." Valenzuela-Gonzalez, 915 F.2d at 1276 (internal quotations omitted). Petitioners' explanation for this omission is that an order that remands pendent state law claims cannot be a "controlling question of law" that could "materially affect the eventual outcome of the litigation" as required by section 1292(b). Petitioners' Brief at 8 (internal quotations omitted). However, we need not decide whether, in this case, section 1292(b) certification was available. Even if it were, we would not find it to preclude mandamus because seeking certification is not a prerequisite for obtaining mandamus, see supra p. 1488, and all the other factors relevant to whether mandamus should issue point in favor of granting the writ. Cf. Caleshu v. Wangelin, 549 F.2d 93, 96 n. 5 (8th Cir.1977) ("We do not think we are about to require that petitioner first seek interlocutory review when mandamus is clearly an appropriate remedy.").
 
 D. Remaining Factors
 
 56
 It is clear to us that the district court's errors in this case are "likely to be 'oft repeated.' " Valenzuela-Gonzalez, 915 F.2d at 1279 (emphasis added). Although there is no evidence of the extent to which district courts have interpreted section 1367 erroneously, this certainly is the type of error that is likely to persist if the appropriate standards are not clarified. Moreover, the relationship between section 1367 and the Gibbs regime is clearly an important issue that has not directly been passed upon by this circuit.[11] Therefore, issuing the writ would advance this circuit's policy that "mandamus is particularly appropriate when [a court] is called upon to determine the construction of a federal procedural rule in a new context." Valenzuela-Gonzalez, 915 F.2d at 1279 (citing, inter alia, Schlagenhauf v. Holder, 379 U.S. 104, 111, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964)). Finally, because numerous cases involve supplemental jurisdiction, granting the writ to resolve the issues considered above would "substantially aid the administration of justice." City of Las Vegas v. Foley, 747 F.2d 1294, 1296 (9th Cir.1984).
 
 E. The Scope of Relief
 
 57
 Accordingly, we conclude that the issuance of the writ in this case is appropriate. We hold that the district court clearly erred by misapprehending the appropriate source and scope of its discretion. Thus, we vacate the remand order entered by the district court. We wish to make clear, however, that nothing in the above analysis is meant to indicate whether or not supplemental jurisdiction in this case is inappropriate; it remains the duty of the district court to consider the propriety of pendent jurisdiction "at every stage of the litigation," Carnegie-Mellon, 484 U.S. at 350, 108 S.Ct. at 619, after proper consideration of section 1367.
 
 Conclusion
 
 58
 To recapitulate, we hold that the district court clearly erred in concluding that the enactment of section 1367(c) did not alter the scope of its discretion to remand pendent state law claims under Gibbs. Under section 1367(a), unless expressly precluded by a federal statute, a district court must exercise supplemental jurisdiction over pendent state claims within its Article III jurisdiction unless section 1367(b) or one of the categories specifically enumerated in section 1367(c) applies. Furthermore, we hold that section 1367(c)(4), which permits a remand of state claims for "compelling reasons" under "exceptional circumstances," is narrower than the "economy, convenience, fairness, and comity" standard applied by the district courts under Gibbs.
 
 
 59
 For the above reasons, the writ of mandamus is GRANTED, and an order shall be entered VACATING the remand order entered by the district court.
 
 LEAVY, Circuit Judge, dissenting:
 
 60
 I dissent.
 
 
 61
 Prior to the passage of 28 U.S.C. Sec. 1367, the district courts had wide-ranging discretion whether to entertain jurisdiction over pendent state claims. The issue presented itself whenever a district court was faced with the question of whether to retain jurisdiction over a pendent claim or to decline jurisdiction by remanding the claim in removed cases or by dismissing it in others. There was no requirement that a district court give reasons for exercising or declining to exercise jurisdiction. Rather, the decision on pendent claims was committed wholly to the district courts' discretion. Schneider v. TRW, Inc., 938 F.2d 986, 993 (9th Cir.1991).
 
 
 62
 As part of an attempt to remedy "mounting public and professional concern with the federal court's congestion, delay, expense, and expansion," the Chief Justice, at the direction of Congress, appointed the Federal Courts Study Committee to, among other things, propose a solution to those problems. Report of the Federal Court Study Committee, at 3 (April 2, 1990) (hereinafter "Committee Report"). The Committee was "not asked to propose changes in substantive law." Id. Rather, the "proposals [were to be] incremental, not radical; we have explicitly foresworn radical proposals." Id. at 4.
 
 
 63
 To overcome the restrictions on supplemental jurisdiction created by Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), the Committee wished to "plac[e] a firm statutory foundation under 'pendent party jurisdiction,' which enables a federal claimant to name as a defendant a party against whom the claimant has a related claim under state law, in order to be able to present the entire case in one court (and that a federal court)." Id. at 15. Thus the Committee advocated legislation to give the courts the authority "to hear and determine, without an independent basis of federal jurisdiction, claims related to matters properly before them." Id. at 47. The Committee intended that the legislation commit the exercise of supplemental jurisdiction to the discretion of the district courts:
 
 
 64
 These supplemental forms of jurisdiction which may be exercised in the discretion of the federal courts, enable them to take full advantage of the rules on claim and party joinder to deal economically--in single rather than multiple litigation--with matters arising from the same transaction or occurrence. Pendent and ancillary jurisdiction may be used with respect either to additional claims between parties already before the courts (as with compulsory counterclaims) or to claims bringing in new parties (as with impleader of a third-party defendant).
 
 
 65
 Id. (emphasis added).
 
 I. Section 1367(a)
 
 66
 In line with the Committee's intent to codify supplemental jurisdiction, section 1367(a) specifically provides:
 
 
 67
 Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
 
 
 68
 (Emphasis added.) Section 1367(a) does not mandate that a district court "exercise" supplemental jurisdiction. It simply states that a district court "shall have supplemental jurisdiction." If Congress had intended otherwise, the language would have read "the district courts shall exercise supplemental jurisdiction" instead of "the district courts shall have supplemental jurisdiction." Section 1367(a) does not restrict the discretion of district courts any more than it had been restricted by the language of United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In conferring jurisdiction, section 1367(a) excepts the provisions of both sections 1367(b) and (c). I cannot agree that section 1367(a) somehow creates a presumption in favor of jurisdiction as opposed to the range of discretion permitted under section 1367(c).
 
 II. Section 1367(c)
 
 69
 While section 1367(a) codifies jurisdiction for pendent claims, including pendent parties, section 1367(c) spells out the circumstances under which the district courts may, in their discretion, decline to exercise supplemental jurisdiction under section 1367(a). According to section 1367(c)(1)-(4), the district courts may decline to exercise jurisdiction over state claims if:
 
 
 70
 (1) the claim raises a novel or complex issue of State law,
 
 
 71
 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
 
 
 72
 (3) the district court has dismissed all claims over which it has original jurisdiction, or
 
 
 73
 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
 
 
 74
 The House Report that accompanied the final version of the statute explains the goal of section 1367(c):
 
 
 75
 [Section 1367(c) ] codifies the factors that the Supreme Court has recognized as providing legitimate bases upon which a district court may decline jurisdiction over a supplemental claim. Subsection (c)(1)-(3) codifies the factors recognized as relevant under current law. Subsection (c)(4) acknowledges that occasionally there may exist other compelling reasons for a district court to decline supplemental jurisdiction, which the subsection does not foreclose a court from considering in exceptional circumstances.
 
 
 76
 H.R. No. 734, 101st Cong., 2d Sess. 29 (1990), reprinted in 1990 U.S.C.A.A.N. 6860, 6875. To say that "[s]ubsection (c)(1)-(3) codifies the factors recognized as relevant under current law" is a recognition that the factors in Gibbs; i.e. judicial economy, convenience and fairness to litigants, and comity, Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139, are incorporated in the statute. Subsections 1367(c)(1)-(3) each involve one or more of the Gibbs factors; for example, subsection (c)(1), "novel and complex issue[s] of state law" certainly involves considerations of comity. Then, section 1367(c)(4) broadens the discretion of the district court beyond the Gibbs factors, where there are other "compelling" reasons in "exceptional" circumstances. Section 1367(c) is exactly in line with the Committee's recommendation: "In order to minimize friction between state and federal courts, ... Congress should direct federal courts to dismiss state claims if these claims predominate or if they present novel or complex questions of state law, or if dismissal is warranted in the particular case by considerations of fairness or economy." Committee Report at 47-48.
 
 
 77
 The House Report speaks of "factors" recognized under current law. It also speaks of "reasons" for a court to decline jurisdiction which the subsection "does not foreclose a court from considering in exceptional circumstances." (Emphasis added.) None of the language of the House Report suggests that the "factors" are threshold requirements that must be met before the court is allowed to exercise its discretion. To the contrary, the use of the word "factors" indicates that guidelines for exercising discretion are being codified.
 
 
 78
 I do not believe the legislation was intended to abandon the doctrine of pendent jurisdiction as "a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988). In line with the broad discretion conferred by section 1367(c) to decline supplemental jurisdiction, the statute contains no requirement of findings.
 
 
 79
 The intent of Congress was "to implement the noncontroversial recommendations of the Federal Courts Study Committee." 150 Cong.Rec. H13313 (daily ed. Oct 27, 1990) (statement of Rep. Kastenmeier). Both the Federal Courts Study Committee and Congress clearly expressed their intention that a statutory basis for Gibbs be provided, that the implementation of that goal was to be "noncontroversial," not "radical," and that no changes in substantive law were proposed. The language of the statute and its legislative history are consistent, but the majority has chosen a radical approach to the application of the statute by compelling district courts to exercise supplemental jurisdiction. Although a codification of Gibbs may not conform to what one law professor thought should happen with supplemental jurisdiction, see Federal Courts Study Committee Implementation and Civil Justice Report Act: Hearings on H.R. 5381 Before the Subcomm. on Courts, Intellectual Property, and the Administration of Justice, 101st Cong., 2d Sess., at 708 (1991) (the letter of Prof. Thomas M. Mengler), nowhere in the legislative history does it appear that Congress intended to change the standards of Gibbs, or that district courts were being compelled to exercise supplemental jurisdiction.
 
 
 80
 Contrary to what the majority suggests, the Third Circuit has correctly interpreted section 1367(c). In Growth Horizons, Inc. v. Delaware County, 983 F.2d 1277, 1284 (3d Cir.1993), that court states:
 
 
 81
 Subsection [1367] (c) ... provides that a district court may, in its discretion, decline to exercise jurisdiction if any of four conditions [of section 1367(c) ] are met ... In making its determination, the district court should take into account generally accepted principles of "judicial economy, convenience, and fairness to the litigants."
 
 
 82
 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). The Third Circuit explains:
 
 
 83
 "Whether a dismissal of the touchstone claim should bring about a dismissal ... of the dependent claim for want of supplemental jurisdiction would hinge on the moment within the litigation when the dismissal of the touchstone claim takes place and on the other surrounding circumstances.... [I]f the dismissal of the main claim occurs late in the action, ... knocking [the dependent claims] down with a belated rejection of supplemental jurisdiction may not be fair."
 
 
 84
 Id. at 1284-85 (quoting David D. Siegel, Practice Commentary, appended to 28 U.S.C.A. Sec. 1367). In Growth Horizons, the Third Circuit recognized the broad discretion the statute grants and remanded to the district court "with instructions that it exercise its discretion as to whether it should decide [the] state law claim or dismiss that claim without prejudice." 983 F.2d at 1285 (footnote omitted). Thus the majority misreads the holding of Growth Horizons, by quoting a footnote that misreads the statute. See Growth Horizons, 983 F.2d at 1285 n. 14.
 
 
 85
 Because the Gibbs standards survived the enactment of section 1367, I cannot say that the district court clearly erred in remanding the plaintiff's state law claims by applying the Gibbs standards. Under the clearly erroneous standard, we should not require the district court to persuade us that it is correct. Because I cannot conclude that the district court is wrong, I would deny the petition.
 
 ORDER
 
 86
 April 18, 1994.
 
 
 87
 The mandate, filed January 27, 1994 in this case, is hereby RECALLED and VACATED.
 
 
 
 [1]
 Because the parties are in substantial agreement in their arguments, we use "Petitioners" to refer to arguments advanced by both the petitioners and the plaintiff
 
 
 [2]
 Section 1292(b) provides in part:
 When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals .. may thereupon, in its discretion, permit an appeal to be taken from such an order....
 28 U.S.C. Sec. 1292(b) (1988).
 
 
 [3]
 The complete text of Sec. 1367 provides:
 (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
 (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.
 (c) The district courts may decline to exercise supplemental jurisdiction over claims under subsection (a) if--
 (1) the claim raises a novel or complex issue of State law,
 (2) the claim substantially predominates over the claim or claims over which the district court had original jurisdiction,
 (3) the district court has dismissed all claims over which it has original jurisdiction, or
 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
 (d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.
 (e) as used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.
 28 U.S.C.A. Sec. 1367 (West 1993).
 
 
 [4]
 Section 1367(b) prevents the assertion of supplemental jurisdiction when the policies behind the limitations on diversity jurisdiction would be defeated. See generally Colloquy, Perspectives on Supplemental Jurisdiction, 41 Emory L.J. 1 (1992). None of the concerns embodied in Sec. 1367(b) are raised by this case. In addition, the proviso to Sec. 1367(a), that supplemental jurisdiction cannot be asserted if expressly prohibited by a federal statute, similarly does not apply
 
 
 [5]
 Judge Leavy in his dissent suggests that we misread Growth Horizons because this "footnote ... misreads the statute." Dissent at 1499-1500. However, nothing in our analysis contradicts that of the Growth Horizons court. As explained below, see infra note 6, it appears that Sec. 1367(c)(3) was intended to codify the preexisting caselaw with respect to the precise situation that it covers: whether the state law claims should be dismissed or remanded when the "district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. Sec. 1367(c)(3) (West 1993). There is no tension between this result and reaching the conclusion that Sec. 1367(a) requires the assertion of supplemental jurisdiction unless the district court may rely permissibly on a section 1367(c) category, or the conclusion that Sec. 1367(c)(4) narrows the range of situations in which reliance on the Gibbs standard is permissible outside of those specified in Sec. 1367(c)(1)-(3)
 More fundamentally, Judge Leavy's assertion that Sec. 1367(a) does not mandate the assertion of supplemental jurisdiction unless it may properly be declined pursuant to Sec. 1367(c), or is precluded by Sec. 1367(b), is belied by the statutory structure. Had Congress intended the assertion of jurisdiction under Sec. 1367(a) to be discretionary apart from that discretion provided in Sec. 1367(c), the latter would be superfluous.
 
 
 [6]
 Our interpretation of Sec. 1367(c)(4) does not preclude the possibility that Sec. 1367(c)(1)-(3) may have codified certain aspects of Gibbs or may have narrowed or broadened Gibbs in other ways. Nor do we imply that the values of judicial economy, fairness, convenience and comity are not relevant in interpreting Sec. 1367(c)(4). See Growth Horizons, 983 F.2d at 1284 (stating that courts should still take into account these values). But cf. LaSorella, 818 F.Supp. at 1415 (stating that Sec. 1367(c) abandoned these considerations)
 Thus, we do not believe our holding is in tension with our prior decision in Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993). There, we held that Sec. 1367(c)(3) codified the result in Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), that a district court must balance the factors of "economy, convenience, fairness, and comity" in determining whether it will retain jurisdiction over pendent state law claims after the federal claims have been dismissed, Imagineering, 976 F.2d at 1309 (citing Carnegie-Mellon, 484 U.S. at 353, 108 S.Ct. at 620). Imagineering did not hold that Sec. 1367 as a whole codified Gibbs; rather, we only determined that the values that underlay the general Gibbs test informed the scope of Sec. 1367(c)(3), a result reached by most courts, see, e.g., Growth Horizons, 983 F.2d at 1284-85; Lewis v. Law-Yone, 813 F.Supp. 1247, 1257 (N.D.Tex.1993). Accordingly, nothing in Imagineering undermines our conclusion that a court may remand only on grounds specifically listed in Sec. 1367(c), and that Sec. 1367(c)(4) is narrower than its Gibbs's counterpart. Cf. Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 692 (9th Cir.1993) (refusing to find an abuse of discretion under Sec. 1367(c)(3) but not citing Imagineering ), cert. denied, --- U.S. ----, 114 S.Ct. 924, 127 L.Ed.2d 217.
 
 
 [7]
 The Senate adopted the analysis of the House Report. See 150 Cong.Rec. S17580 (daily ed. Oct. 27, 1990)
 
 
 [8]
 Judge Leavy asserts that the House Report's use of the terms "reasons" and "factors" and the statement that "[s]ubsection (c)(1)-(3) codifies the factors recognized as relevant under current law," House Report, supra, at 29, reprinted in 1990 U.S.C.C.A.N. 6860, 6875, indicates that a decision to decline supplemental jurisdiction need not be made pursuant to one of the section 1367(c) categories, but may be made solely upon a determination of when that decision would comport with the general Gibbs test. See Dissent at 1498-99. However, as discussed above, this reading of the statute is directly contrary to its language and structure. Moreover, if the general Gibbs standard is somehow embodied in the Sec. 1367(c)(1)-(3) factors, it is difficult to understand how Sec. 1367(c)(4) can be viewed, as Judge Leavy asserts it must, as "broaden[ing] the discretion of the district court." Dissent at 1499 (emphasis in original). If the district court under the Gibbs standard is free to remand pendent state law claims whenever doing so "best accommodate[s] the values of economy, convenience, fairness and comity," Carnegie-Mellon, 484 U.S. at 351, 108 S.Ct. at 619, consideration of Sec. 1367(c)(4)'s "exceptional circumstances" and "compelling reasons" criteria could only serve to narrow those factors' application. Therefore, the House Report's assertion that Sec. 1367(c)(1)-(3) embody all the situations to which the Gibbs standard could have applied cannot be taken literally. Finally, Judge Leavy's position cannot be reconciled with the change in the language of Sec. 1367(c)(4) from the Gibbs standard to its current form. See infra p. 1495
 
 
 [9]
 Thus, the drafters appeared to reject the recommendation of the Federal Courts Study Committee that "Congress should direct federal courts to dismiss state claims if these claims predominate or if they present novel or complex questions of state law, or if dismissal is warranted in the particular case by considerations of fairness or economy." FCSC Report, supra, at 48 (emphasis added)
 
 
 [10]
 Therefore, although Finley clearly inspired Sec. 1367, see, e.g., FCSC Report, supra, at 47, the district court was incorrect in concluding that reversing Finley was the statute's sole objective. See also 13B Wright & Miller, supra, Sec. 3567.3, at 39 n. 14 (Supp.1992) (noting that the statute did more than overrule Finley )
 
 
 [11]
 See supra note 6 (discussing Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303 (9th Cir.1992))